KRISTINE MILES *v.* ROBERT W. PERRY ET AL.
(4736)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 3—decision released July 21, 1987

*Tracy Alan Saxe,* for the appellant (named defendant).

*Barry J. Boodman,* for the appellants (defendants Joyce Yerwood et al.).

*Kathryn C. Senie,* with whom was *Christopher G. Senie,* for the appellee (plaintiff).

DUPONT, C. J. In this defamation action, the defendants[1] appeal from the judgment of the trial court rendered in favor of the plaintiff. The dispositive issues[2]

---

[1] Four of the six defendants named in the complaint have appealed from the judgment of the trial court. They are: Robert W. Perry, pastor of the Union Baptist Church; Joyce Yerwood, chairperson of the church board of trustees; Gerald Ross, vice-chairman of the church board of trustees; and Mattie Drakeford, financial secretary to and member of the church board of trustees. Russell Britt, chairman of the board of deacons, upon motion, with the plaintiff's and the trial court's permission, withdrew as a defendant during the course of the trial, and John Johnson, auditor-accountant to the church, did not appeal from the trial court's judgment against him.

[2] The defendants, in their joint brief, have advanced ten issues as the basis for their claimed errors on appeal. The issues involving joint and several liability, libel per se, slander per se, and demand for retraction are discussed in this opinion in connection with the broad issue of general damages. The issue involving malice is discussed in this opinion in connection with the issue of privilege.

to be determined on this appeal are whether the trial court erred (1) in concluding that the plaintiff is not a public figure, (2) in holding that the defendants did not successfully prove any recognized privilege which would immunize them from liability for harm caused by defamatory falsehoods, (3) in awarding the plaintiff $25,000 as general damages, without proof of special damages, and (4) in holding the defendants jointly and severally liable for the entire amount of damages. We find no error.

The trial court found the following facts. The plaintiff had been a member of the Union Baptist Church in Stamford for thirty years. She served on the church's finance committee and as the financial secretary of the church for the six years immediately prior to the time when the church's board of trustees eliminated the latter position.[3] The defendants are the pastor of the church and several members of the church's board of trustees.

In 1981, the defendants employed an accountant[4] to review the church's tax exempt status. The review prompted an investigation by the board of trustees concerning the financial affairs of the church. In January, 1983, a meeting of the church membership was called for the purpose of informing the membership of the investigatory findings. The accountant employed by the board of trustees participated in the meeting of the membership.

At the church meeting, the defendants orally presented prepared texts and displayed photographic slides designed to illustrate their statements. Specifically, the testimony showed that at the meeting, the defendant

[3] The position of financial secretary was later reinstated, and one of the defendants assumed the position.

[4] See footnote 1, supra. The accountant was originally named as a defendant but did not appeal from the trial court's judgment.

Gerald Ross, vice-chairman of the board of trustees, read a statement referring to the "former financial secretary" and "questionable transactions." The defendant Mattie Drakeford, the financial secretary of the church, read a further explanation of the charges. The defendant John Johnson, auditor for the church, showed several slides of checks purporting to substantiate the alleged claim that funds had been "misappropriated." The defendant Robert W. Perry, pastor of the church, acted as moderator of the meeting and read a statement of purpose referring to "discrepancies of church funds." Also, both Perry and the defendant Joyce Yerwood, chairman of the board of trustees, answered questions posed to them by the congregation.

At trial, various witnesses testified that there was absolutely no question in their minds that the defendants' reference to the "former financial secretary" related to the plaintiff, and that all of the defendants were accusing the plaintiff of misappropriating church funds. The plaintiff testified that after the church meeting people shunned her and accused her of stealing funds from the church. In February, 1983, she stopped attending the church.

Although the plaintiff did not claim to have suffered any actual pecuniary harm, she did claim general damages for the humiliation and mental anguish that she allegedly suffered as a result of the defendants' defamatory remarks. The trial court found that the defendants' remarks regarding her alleged misappropriation of funds were defamatory. The trial court further found that the plaintiff had proven that those assertions were false. It also concluded that the defendants' remarks were actionable per se as libel and slander. The trial court awarded the plaintiff the sum of $25,000, and held all the defendants jointly and severally liable for the entire amount.

## I

For the purpose of determining the constitutional protection afforded the defendants' speech under the first amendment to the United States constitution, the first issue which this court must address is the defendants' assignment of error to the trial court's conclusion that the plaintiff was not a public figure. The determination of whether a plaintiff is a public figure is dispositive of the standard of proof and the degree of fault of the defendants which the plaintiff had to prove. Under the rule enunciated by the United States Supreme Court in *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), as later extended in *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967), a public figure, as well as a public official, cannot recover damages for a defamatory falsehood, absent clear and convincing proof that the defamatory falsehood was published or broadcast with actual malice, that is, with knowledge that the statement was false or with reckless disregard for its falsity. *New York Times Co.* v. *Sullivan,* supra, 280. The standard of fault applicable to "private individuals," on the other hand, merely requires the plaintiff to prove a negligent misstatement of fact. *Rosenblatt* v. *Baer,* 383 U.S. 75, 84, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966). The United States Supreme Court's subsequent decision in *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), refined the controlling standard in defamation suits when such suits are brought by private individuals. "[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Id., 347. Thus, if the plaintiff is a public figure, she would need to prove actual malice; *Holbrook*

v. *Casazza,* 204 Conn. 336, 342, 528 A.2d 774 (1987); *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 534–36, 368 A.2d 125 (1976); *Moriarty* v. *Lippe,* 162 Conn. 371, 377–78, 294 A.2d 326 (1972); but if she is a private individual, she need only prove, by a preponderance of the evidence, negligence in the failure to investigate the facts properly prior to publication. *Corbett* v. *Register Publishing Co.,* 33 Conn. Sup. 4, 10, 356 A.2d 472 (1975); 3 Restatement (Second), Torts § 580B, pp. 221–22.

The trial court held that the plaintiff was a private individual. Ordinarily, the plaintiff, as a private individual, need only have proved, by a preponderance of the evidence, that the defendants negligently made the defamatory statements. The trial court found, however, that the plaintiff proved malice by a preponderance of the evidence. In this case, the plaintiff needed to prove malice in fact for two reasons. First, the plaintiff needed to prove malice in order to rebut the defendants' defense of privilege. Second, the plaintiff needed to prove malice in order to recover general damages, without proof of special damages.

We must determine whether the trial court was correct in its finding that the plaintiff was a private individual. This is necessary because that finding determines the standard of proof required for any finding of malice of the defendants as it relates to their defense of privilege. Furthermore, if the plaintiff were a public figure, the scope of judicial review might be different.

Appellate courts ordinarily do not disturb the facts as found by the trial court unless the findings of facts are clearly erroneous. See Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). In *Brown* v. *K.N.D. Corporation,* 7 Conn. App. 418, 509 A.2d 533, cert.

granted, 201 Conn. 802, 513 A.2d 696 (1986), however, this court held that where a defamation plaintiff is a "public official,"[5] the trial court's determination of whether the public official proved actual malice with clear and convincing evidence is susceptible to an independent de novo review by appellate courts, in order to insure that the defendant's first amendment guarantees are not unduly trampled upon. Therefore, if the plaintiff is a public figure, we would need to decide if a de novo review is mandated or if the clearly erroneous standard of review would suffice.[6] If the plaintiff is a private individual, however, the trial court's finding of actual malice is subject only to the clearly erroneous standard of judicial review.

Also, if the plaintiff is a public figure, she is required to prove actual malice by clear and convincing evidence. If the plaintiff is a private individual, on the other hand, she is required to prove actual malice, in order to rebut the defense of privilege and recover general damages, merely by a preponderance of the evidence. *Dacey* v. *Connecticut Bar Assn.*, supra, 534; *Darrow* v. *Fleischner*, 117 Conn. 518, 520, 169 A. 197 (1933).

We hold, for the reasons stated below, that the plaintiff is a private individual and, therefore, that the plaintiff had to prove her case and rebut the defense of privilege by a preponderance of the evidence. As a

[5] A "public official" is defined as a person within the hierarchy of government "who [has] or appear[s] to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt* v. *Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966).

[6] There may be real differences between a public official and a public figure that constitutionally compel de novo review of malice findings where the plaintiff is a public official but not where the plaintiff is a public figure. For example, a public figure, as opposed to a public official, can recover damages for a defamatory falsehood upon a showing of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co.* v. *Butts*, 388 U.S. 130, 158, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967).

result of our holding, we need not decide the issue of whether a finding of malice is subject to de novo appellate review when the plaintiff is a public figure.

In *Gertz,* the United States Supreme Court defined the meaning of "public figure" for the purposes of the first and fourteenth amendments: "For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, *those classed as public figures have thrust themselves to the forefront of particular controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment."* (Emphasis added.) *Gertz* v. *Robert Welch, Inc.,* supra, 345. The United States Supreme Court further cautioned that the determination of whether a particular plaintiff is a "public figure" should be made with reference to a limited and more meaningful context than the context of the general society. "It is preferable to reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Id., 352.

The defendants argue that because the plaintiff was a church official and because their actions should be viewed in the context of the church environment, she was a public figure. The defendants point out the following facts in support of their position. The meeting called by the church's board of trustees was a "Special Meeting" to "Report on Discrepancies of Church Funds" before the membership. The plaintiff was discussed or alluded to only in her official capacity as financial secretary or finance committee member.

In support of their proposition, the defendants rely on several cases holding union officers to be public

figures during union elections. In *Materia* v. *Huff,* 394
Mass. 328, 475 N.E.2d 1212 (1985), the Massachussetts
Supreme Judicial Court held that the plaintiff, the
secretary and treasurer of a teamsters local and a
trustee of a health and welfare fund, was a public fig-
ure in the context of a controversy arising out of a ree-
lection campaign.[7] That court emphasized the fact that
a union official or candidate seeking election to a union
office voluntarily thrusts himself into the controversy
and invites open scrutiny of his character for honesty
and integrity, qualifications, and fitness for office. Criti-
cism of the public figure on these subjects constitutes
no more than fair comment. Id., 331; accord *Perruccio*
v. *Arseneault,* 7 Conn. App. 389, 390, 393–94, 508 A.2d
831 (1986).

Although the relevant context to decide this issue is
the membership society of the Union Baptist Church,
we cannot say that the plaintiff thrust herself into the
forefront of the church's financial affairs merely by
serving as financial secretary. The plaintiff's duties
mainly involved bookkeeping tasks; she did not serve
as accountant or financial adviser.

Contrary to the defendants' argument, the plaintiff's
position vis-a-vis the church membership is significantly
different from that of a union officer's position with
regard to the union membership during union elections.
Unlike union officials campaigning for union office, the
plaintiff in this case did not voluntarily expose herself

[7] Union officers are generally held to be public figures for purposes of
union business where their activities place them in a controversy which
invites scrutiny of their integrity, character, and professional ability. See
generally *Miller* v. *Transamerican Press, Inc.,* 621 F.2d 721, 724 (5th Cir.
1980), cert. denied, 450 U.S. 1041, 101 S. Ct. 1759, 68 L. Ed. 2d 238 (1981);
*Korbar* v. *Hite,* 43 Ill. App. 3d 636, 357 N.E.2d 135 (1976), cert. denied,
434 U. S. 837, 98 S. Ct. 127, 54 L. Ed. 2d 98 (1977); *Lins* v. *Evening News
Assn.,* 129 Mich. App. 419, 342 N.W.2d 573 (1983); *City Firefighters Union
Local 28* v. *Duci,* 104 Misc. 2d 498, 428 N.Y.S.2d 772 (1976).

to public comment. Public officials and public figures, it may be assumed, invite public attention and comment. No such assumption is justified with respect to a private individual who "has relinquished no part of his interest in the protection of his own good name." *Gertz* v. *Robert Welch, Inc.,* supra, 345. The plaintiff did not "assume any role of especial prominence" in the affairs of the church, she did not voluntarily "thrust herself into the forefront" of the controversy over the church's financial affairs, nor did she seek elective office in the church. See, e.g., *Time, Inc.* v. *Firestone,* 424 U.S. 448, 453, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976).

Moreover, the trial court found, and the record substantiates the finding, that the plaintiff was not discussed or alluded to solely with reference to her capacity as financial secretary or finance committee member, but also as an individual member of the church. The essence of the defamatory remarks made by the defendants trampled not only upon the qualifications and integrity of the plaintiff in her official capacities but also denigrated the honesty and integrity of the plaintiff as an individual. Public officials and public figures usually enjoy a significantly greater access than private individuals to the channels of effective communication which can then be used by them to either dispel false statements made about them or to advance their own position. *Gertz* v. *Robert Welch, Inc.,* supra, 344; *Rosenblum* v. *Metromedia, Inc.,* 403 U.S. 29, 70, 91 S. Ct. 1811, 29 L. Ed. 2d 296 (1971) (Harlan, J., dissenting). In her position as the former financial secretary or as a former finance committee member, the plaintiff did not have access to an effective means of communication in which to rebut the accusations made by the defendants against her. The plaintiff, as a private individual, is "more vulnerable to injury than public officials and public figures." *Gertz* v. *Robert Welch, Inc.,* supra, 345.

We hold that the trial court did not err in its determination that the plaintiff was not a public figure. Therefore, in order to rebut the defense of privilege and recover general damages, the plaintiff merely had to show actual malice by a preponderance of the evidence, and not by clear and convincing evidence. Furthermore, the trial court's finding of actual malice is subject merely to the clearly erroneous standard of appellate review.

## II

The defendants assign error to the trial court's conclusion that they are not entitled to invoke any privilege in order to immunize themselves from liability for defamatory falsehoods. The defendants assert two privileges: (1) a conditional or qualified privilege applicable to false expression encompassing a matter of public concern; and (2) a conditional or qualified privilege conditioned upon statements made in the course of official duties.[8]

---

[8] A qualified or conditional privilege arises out of an "occasion," such as, when one acts in the bona fide discharge of a public or private duty. *Flanagan* v. *McLane,* 87 Conn. 220, 221-22, 88 A. 96 (1913). Privilege is an affirmative defense in a defamation action and must, therefore, be specifically pleaded by the defendant. *Monczport* v. *Csongradi,* 102 Conn. 448, 450-51, 129 A. 41 (1925); *Haight* v. *Cornell,* 15 Conn. 73, 82 (1842). It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty. *Charles Parker Co.* v. *Silver City Crystal Co.,* 142 Conn. 605, 616, 116 A.2d 440 (1955); *Flanagan* v. *McLane,* supra, 222. It is a question of fact for a court or a jury, however, to determine whether the defendant has abused a conditional privilege. *Flanagan* v. *McLane,* supra. A conditional or qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith. *Atwater* v. *Morning News Co.,* 67 Conn. 504, 513, 34 A. 865 (1896). Therefore, a conditional privilege may be recognized only where the statement is made in good faith, without malice, in an honest belief in the truth of the statement, and in discharge of a public or private duty. *Charles Parker Co.* v. *Silver City Crystal Co.,* supra.

The defendants must sufficiently prove five prerequisites in order to establish the defense of either of the two conditional privileges claimed by them. The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only. See generally *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 615, 116 A.2d 440 (1955). Neither conditional privilege exists where the defamatory remarks are activated by malice, improper motive, or lack of good faith in making the statement. See id.

The defendants first advance the privilege of public concern. The thrust of the defendants' argument is that the plaintiff was discussed only in her official capacity as financial secretary or finance committee member, and that the subject of the church's financial affairs is of great interest to the members of the church who gave contributions to it. The trial court held that an occasion for privilege did not exist because the defendants were not simply making fair comment on matters of public interest, but rather made the statements as facts about the plaintiff's conduct with respect to church funds, which conduct was not a subject of "important common interest."

The privilege of fair comment is a common law qualified privilege arising out of an occasion to express an opinion or otherwise comment on matters of public interest. Although pure opinions enjoy virtually complete constitutional protection, such is not the case with the factual statements involved here. In addition to the requirement of good faith, the defendants must show that the statements made concern a public interest. *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 111 n.4, 113, 438 A.2d 1317 (1982). The defendants have failed to do so. The defendants rely on the decision in *Gospel Spreading Church* v. *Johnson*

*Publishing Co.,* 454 F.2d 1050 (D.C. Cir. 1971), which held that the financial activities of a church were a public concern. The defendant's reliance on this case is misplaced, however, for several reasons. Of paramount importance, the plaintiff in *Gospel Spreading Church* was the church itself which was considered to be a "public institution" for the purposes of the *New York Times Co.* malice rule applicable to public officials and public figures. "As an established church with substantial congregations it seeks to play 'an influential role in ordering society.' " *Gospel Spreading Church* v. *Johnson Publishing Co.,* supra, 1051, quoting *Curtis Publishing Co.* v. *Butts,* supra, 164. In the case before us, on the other hand, the plaintiff is a private individual and a former member of a church.

The *Gospel Spreading Church* court also emphasized that the defendant magazine publisher made false statements regarding the plaintiff church's real estate activities and tax exemption status. These subjects are of substantial interest to the general public. Conversely, the trial court in the present case specifically found, as the defendants admit in their brief, that the meeting was called for the sole purpose of presenting the results of the accountant's investigations into the church's finances. The full congregation was not asked to vote on any proposals or to act in any other way. Although the church's financial situation in some instances, such as those present in *Gospel Spreading Church,* might be a matter of public concern, that is not the case with respect to the plaintiff's alleged bookkeeping procedures. " 'Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record.' " *Dun & Bradstreet* v. *Greenmoss Builders,* 472 U.S. 749, 105 S. Ct. 2939, 2947, 86 L. Ed. 2d 593 (1985), quoting *Connick* v. *Meyers,* 461 U.S. 138, 147–48, 103 S. Ct. 1684, 75

L. Ed. 2d 708 (1983). The defendants' speech did not concern matters of public interest as defined in case law, and instead related to the defendants' interest in presenting the plaintiff's actions to her fellow parishioners. That speech warrants no special protection under the first amendment where, as here, the speech is proven false and clearly damaging to the plaintiff's personal, social and business reputations.

The second form of conditional privilege that the defendants attempt to invoke is the privilege attaching to an official who makes false statements in good faith during the regular course of performing his official duties.[9] Since the church members support the church by their contributions, the defendants argue that, as trustees, they are in a fiduciary relationship with respect to the church members and therefore have a responsibility to account for and report to the membership on the state of church funds. The defendants advance the proposition that as trustees they were privileged to make the statements at the meeting pursuant to their duty to protect the church's funds.

---

[9] W. Prosser & W. Keeton, Torts (5th Ed.) § 115, p. 828, explains this privilege as follows: "A conditional privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently in such cases there is a legal, as well as a moral obligation to speak. This is most obvious, of course, in the case of those who have entered upon or are considering business dealings with one another, or where the parties are members of a group with a common pecuniary interest . . . . " Id., 828. Similarly, with regard to official action, Prosser and Keeton state: "[T]he 'public interest' privilege involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public. It is on this basis that communications from one public officer to another, in an effort to discharge official duty, are held to be at least qualifiedly privileged. . . . But private citizens likewise are privileged to give information to proper authorities for the prevention or detection of crime, or to complain to them about the conduct of public officials and seek their removal from office." Id., p. 830.

Although it is not disputed that the church has an interest in its own finances, the trial court found that the statements made relating to that interest were not made in good faith, and were made with malice and in an improper manner to improper parties. The trial court held, therefore, that the defendants could not invoke a qualified privilege. These findings are not clearly erroneous. *Holbrook* v. *Casazza,* supra, 344; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra.

The court found that the defendants failed to confine their publication to proper persons. In this case, the court concluded that proper persons were not the church membership. Rather, publication of remarks based upon the investigatory data ordered by the church's board of trustees should have been confined to the members of the board in their official capacities or to an appropriate investigatory agency.[10] For example, in *Lieberman* v. *Gant,* 474 F. Sup. 848 (D. Conn. 1979), aff'd, 630 F.2d 60 (2d Cir. 1980), the court upheld a conditional privilege where the defendant's statements, which allegedly attacked the credentials of a teacher whose tenure was being reviewed, confined the statements to proper parties. The proper party in *Lieberman* was the Dean's advisory council, not the faculty and student populations.

Additionally, the trial court was not convinced that the defendants publicized the defamatory statement in good faith. The defendants rely on *Ely* v. *Mason,* 97 Conn. 38, 44, 115 A. 479 (1921), for the proposition that a defendant invoking a conditional privilege is not

[10] See *Flanagan* v. *McLane,* 87 Conn. 220, 88 A. 96 (1913), where a woman suspected a workman of having stolen money and had written her suspicion to a constable asking him to investigate. After finding the money, she wrote another letter stating that the money was not where she had left it and that she still believed that the workman had taken it. The Connecticut Supreme Court held this was a privileged communication, if made honestly and in good faith. See also footnote 9, supra.

required to show reasonable justifications for his belief that the statements are true, as long as the defendant honestly believes them to be true. The holding in *Ely* only speaks, however, to whether the defendant had an honest belief in the truth of a statement, not whether the defendant published the statements in good faith. The privilege extends to defamatory falsehoods only if made without malice, under an honest belief that they are true, *and* in good faith. The trial court in this case specifically found that the defendants failed to act in good faith, and that finding is supported by the evidence. The evidence showed the frailty of the defendants' claims and the ease with which they could have ascertained the truth upon a good faith investigation before accusing a devoted and long-standing church member of misappropriating church funds.

Finally, the trial court found that the evidence demonstrated malice because the publication was made with improper and unjustifiable motives to disparage the plaintiff and to remove her from any position of authority in the church. False and defamatory statements made with such a purpose may constitute an "improper or unjustifiable motive" which will support a finding of malice in the context of establishing the defense of a conditional privilege. *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 564, 72 A.2d 820 (1950).

The defendants assert that there was no evidence presented by the plaintiff as proof that the statements were made with malice. They maintain that their statements were made "in good faith exercise of their official responsibilities . . . to report to the membership . . . and not to disparage the plaintiff." Their contention, however, is in direct conflict with the factual findings of the trial court as to the motive which prompted the defendants to make the statements. Such a claim essentially challenges the sufficiency of the evi-

dence to support the trial court's findings. See *Gach* v. *Franolich,* 10 Conn. App. 677, 680, 525 A.2d 525 (1987). Our review must determine whether there is evidence on the record to support the finding. *Atwater* v. *Morning News Co.,* 67 Conn. 504, 517, 34 A. 865 (1896). The possibility that another finding could have been made does not suffice to overturn the trial court's findings. *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985). "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975).

There is sufficient evidence of malice to uphold the trial court's finding. Our review of the record reveals a plethora of evidence about the nature of the statements, and of the background and interests of the parties to this dispute from which an inference of improper or unjustifiable motive could be drawn. See *Hassett* v. *Carroll,* 85 Conn. 23, 37, 81 A. 1013 (1911). We cannot say that such a finding is clearly erroneous. Where, as here, proof of malice is shown, the conditional privilege is unavailable to a defendant. We hold that the trial court did not err in making its determination that the defendants could not invoke the protection of a qualified privilege.

### III

The final issue which we must decide is whether the trial court erred in awarding the plaintiff $25,000 as general damages, and holding all the defendants jointly and severally liable for the entire amount.

The trial court concluded that the defendants' accusations of misappropriation of church funds by the plaintiff constituted libel and slander per se and, therefore, that the plaintiff could recover general damages

for the harm caused to her reputation.[11] The defendants argue on appeal that the statements made by them are not actionable because they do not implicate the plaintiff in misappropriation or embezzlement but merely point out discrepancies in her bookkeeping. Accordingly, the defendants contend that because the statements did not unequivocally charge theft, the defamation is not actionable per se.

"[L]ibel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." *Charles Parker Co.* v. *Silver City Crystal Co.*, supra, 612; *Proto* v. *Bridgeport Herald Corporation*, supra,

---

[11] Publication and harm to reputation are two necessary elements of the defamation cause of action. Libel is defamation of character usually consisting of the printed word. Slander, on the other hand, is an oral defamation of character. The distinction between libel and slander, however, has become blurred by the ability of modern communications, such as radio and television, to widely disseminate the spoken word or to disseminate the spoken word with more permanency than does the traditional concept of slander. In *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 116 A.2d 440 (1955), the Connecticut Supreme Court held that reading from a prepared manuscript in a radio address constitutes libel, even though the result is the spoken word, as the words have been reduced to permanent form in the manuscript. There is ample evidence in the trial record in the present case showing that some of the defendants spoke defamatory statements while reading them from a prepared manuscript. Although the spoken word was not published over a radio broadcast, it was, nonetheless, spoken to a large meeting of church members. Although not all of the members attended the church meeting, the speech had a potential of reaching the 1,000 parishioners of the Union Baptist Church. This constitutes broad dissemination in our view.

The impact from these spoken words, coupled with the slide presentation, had the same impact as libel. It is the permanency or the perpetuation of the defamatory speech that is integral to the classification as either slander or libel. The reading from the prepared texts coupled with the display of visual aids is certainly capable of lasting impression in the minds of the church members present at the meeting and, therefore, has "greater capabilities of harm" than obtains with merely the spoken word. See, e.g., id., 612. The trial court correctly classified the defamatory remarks as libel and slander.

566. Slander is actionable per se if it charges incompetence or dishonesty in office, or charges a professional person with general incompetence; *Proto* v. *Bridgeport Herald Corporation,* supra, 567; *Corsello* v. *Emerson Bros., Inc.,* 106 Conn. 127, 130–31, 137 A. 390 (1927); *Wynne* v. *Parsons,* 57 Conn. 73, 75, 17 A. 362 (1888). Libel or slander is also actionable per se if it charges a crime involving moral turpitude or to which an infamous penalty is attached. *Proto* v. *Bridgeport Herald Corporation,* supra. Statements accusing a plaintiff of theft are libelous or slanderous per se. *Yavis* v. *Sullivan,* 137 Conn. 253, 259, 76 A.2d 99 (1950); *Ventresca* v. *Kissner,* 105 Conn. 533, 537, 136 A. 90 (1927); *Battista* v. *United Illuminating Co.,* 10 Conn. App. 486, 492–93, 523 A.2d 1356 (1987).

Once the plaintiff has established that the words are false and actionable per se, barring any statutory provision to the contrary, she is entitled under Connecticut law to recover general damages without proof of special damages. *Charles Parker Co.* v. *Silver City Crystal Co.,* supra, 612; *Battista* v. *United Illuminating Co.,* supra, 492. This is because the law presumes general damages where the defamatory statements are actionable per se. *Battista* v. *United Illuminating Co.,* supra. On the other hand, if the words are defamatory, but not actionable per se, the plaintiff may recover general damages for harm to her reputation only upon proof of special damages for actual pecuniary loss suffered. *Proto* v. *Bridgeport Herald Corporation,* supra, 564.

There was ample evidence in the trial record for the trial court to conclude that the defamatory statements were actionable per se. Whether words are actionable per se is a question of law for the court. *Charles Parker Co.* v. *Silver City Crystal Co.,* supra, 612; *Battista* v. *United Illuminating Co.,* supra. All of the circumstances connected with the publication of defamatory

charges should be considered in ascertaining whether a publication was actionable per se. The words used, however, must be accorded their common and ordinary meaning, without enlargement by innuendo. *Proto* v. *Bridgeport Herald Corporation,* supra, 565.

The trial court specifically found that the defendant had accused the plaintiff of wrongful diversion of funds and that such an accusation amounted to an accusation of theft. The defendants claim that they did not accuse the plaintiff of theft. It is their argument that although they used the word "misappropriation," they meant only that the plaintiff had "misapplied" funds. The context in which the words were used make it evident that an accusation of theft was being made. The defendants' own expert witness, who testified on accounting practices, stated that the word "misappropriation" with reference to such practices raised the inference of wrongful or self-serving activity. Also, other witnesses testified that they had interpreted the defendants' remarks to mean that the plaintiff had stolen church funds. On this basis, we hold that the trial court did not err in concluding that the defamatory words amounted to an accusation of "theft" and were, therefore, actionable per se.

Even if the accusation of "misappropriation" by the defendants, however, could be correctly construed as a reference to the plaintiff's bookkeeping procedures or to mismanagement of the funds, the accusation would nonetheless "amount to an allegation of general incompetence or lack of integrity." *Proto* v. *Bridgeport Herald Corporation,* supra, 567. Such an accusation is also actionable per se.

The defendants further argue that the plaintiff should not be able to recover general damages because she failed to produce any evidence showing harm to her reputation. Regardless of the plaintiff's proof, the

defendants' argument fails to acknowledge that where the law recognizes defamation as actionable per se, the law also presumes damages. *Battista* v. *United Illuminating Co.,* supra.

Furthermore, contrary to the defendants' contentions, the plaintiff did produce evidence of reputational harm. Several witnesses for the plaintiff testified that they entertained no doubts that the plaintiff was being accused by church officials of serious wrongdoing. The plaintiff was an active and devoted church member before she felt compelled to leave the church because of the ridicule she endured from her fellow church members. The question of whether a defamed person's reputation has suffered harm is demonstrated by showing "whether or not a significant segment of the community hold[s] the person in lower esteem." G. Fain, J. Guman & F. Tobin, "The Law of Defamation in Connecticut," 38 Conn. B.J. 420, 422 (1964). The defendants' accusations clearly impugned the plaintiff's honesty and integrity. Both the plaintiff's testimony and the testimony of the plaintiff's witnesses support the trial court's conclusion that the plaintiff's reputation had been harmed.

The defendants next argue that the plaintiff may not recover general damages because she failed to demand a retraction as mandated by General Statutes § 52-237. That statute provides that a plaintiff in a libel action is entitled to recover only alleged and proven special damages unless she shows "malice in fact" or a failure by the defendant to publish a retraction upon the plaintiff's written request.[12] Where the plaintiff is not

---

[12] General Statutes § 52-237 provides: "In any action for a libel the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by him in writing to retract the libelous charge, in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved."

a public figure, the plaintiff need only prove a negligent misstatement of fact in order to recover special or actual damages, regardless of whether a retraction was sought. The plaintiff in the present case, however, claims only general damages. The trial court held that the plaintiff satisfied the standards imposed by General Statutes § 52-237, despite the plaintiff's failure to demand a retraction.

The trial court first concluded that the plaintiff's failure to demand a retraction was excused because it would have been fruitless to seek one. This conclusion was based on evidence regarding earlier events transpiring between the parties. The trial court specifically found that there had been two requests for retractions which predated the January, 1983 meeting and which related to earlier events. The trial court held that a request for retraction after the January, 1983 church meeting was unnecessary because previous requests for retraction had been ignored by the defendants.

The defendants argue that the plaintiff's failure to request a retraction cannot be excused because her previous demands for retraction were made with reference to letters sent to her by the defendants which did not rise to the level of actionable defamation and because those previous demands for retraction were not made to all of the defendants whom she now attempts to hold liable. We need not address the issue on appeal of whether the plaintiff satisfied the statutory retraction requirement because in this case, the trial court held that the plaintiff proved the requisite malice in fact. Under Connecticut law, where the plaintiff proves "malice in fact," she is entitled to recover general damages, even if no retraction has been demanded, or if special damages have neither been alleged nor proved. General Statutes § 52-237; *Osborne* v. *Troup,* 60 Conn. 485, 492–93, 23 A. 157 (1891). The plaintiff must prove by a fair preponderance of the evi-

dence "malice in fact" in order to recover general damages.[13] *Sandora* v. *Times Co.,* 113 Conn. 574, 155 A. 189 (1891).

Moreover, the statute applies only to libel, and not to defamation actions involving slander. The trial court specifically held that although the prepared texts and slides constituted libel, the actual words spoken during the slide presentation and question-and-answer session by the defendants to the church members present at the meeting constituted slander.[14]

A related argument by the defendants on appeal is that the plaintiff is barred from recovery because she provoked the defamatory statements. See *McGee* v. *Collins,* 156 La. 291, 100 So. 430 (1924); 50 Am. Jur. 2d 681, Libel and Slander § 178. The defendants claim that such provocation arose out of the plaintiff's refusal to cooperate with them by allegedly refusing to surrender records in her possession, by refusing to resign from the finance committee, and by refusing to meet with the defendants prior to their publication of the defamatory statements.

Whether or not a defendant in this jurisdiction, however, may claim that a plaintiff is denied recovery in a defamation action where it is claimed that the defamatory statements were provoked by the plaintiff need not be decided in this case. Even if the facts were as the defendant claims them to be, they do not show the kind of provocation that can overcome liability, especially where the plaintiff has shown malice in fact. Application of this defense ordinarily involves a situation where there is a retaliation in kind. See, e.g.,

---

[13] Under General Statutes § 52-237, a private individual must prove a negligent misstatement of fact to recover special damages even without a retraction. That is not the case here, however, where general damages are sought.

[14] See footnote 11, supra.

*Gladney* v. *De Bretton,* 218 La. 296, 49 So. 2d 18 (1950). Such was clearly not the case here, however.

The defendants also argue on appeal that the trial court erred in holding all defendants jointly and severally liable. Specifically, the trial court, quoting 50 Am. Jur. 2d, Libel and Slander § 347, pp. 866–67, held with respect to libel: " 'Whenever two or more persons cooperate in the publication of a libel, all are responsible for the resultant damages, and at his election, the victim can sue them either jointly or severally,' provided that there is . . . 'some degree of concert between the defamers . . . .' " With respect to slander, the trial court, quoting id., § 348, pp. 867–68, stated: "Although generally slander is a . . . 'tort incapable of joint commission' . . . this would not be true if . . . 'the defamation was the result of a concert or a conspiracy between [the defamers], or unless the words were uttered by one at the instigation of another . . . .' " The trial court found the "requisite concert" and "instigation" to warrant the imposition of the doctrine of joint and several liability.

The defendants claim of error is that except for the historical statement in which all of the defendants participated, they did not act in concert. There are no Connecticut cases addressing joint and several liability in defamation actions. The general rule is that "[w]henever two or more perons co-operate in the publication of a libel, all are responsible for the resultant damages . . . [b]ut of course there must be some degree of concert between the defamers; if they acted independently, they are not liable jointly, and may not be joined as defendants." (Citations omitted.) 50 Am. Jur. 2d, Libel and Slander § 347, pp. 866–67. In cases of slander, "the prevailing view is that even though the words are uttered simultaneously, a slander is usually an individual or separate tort incapable of joint commission, so that two or more individuals uttering

slanders against the same person cannot be held jointly liable unless the defamation was the result of a concert or conspiracy between them . . . . " Id., § 348.

Connecticut follows the principle stated in § 876 (a) of the Restatement (Second) of Torts, on joint and several liability: " 'Where two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or in doing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.' " *Lamb* v. *Peck,* 183 Conn. 470, 472, 441 A.2d 14 (1981), quoting *Gutowski* v. *New Britain,* 165 Conn. 50, 54, 327 A.2d 552 (1973); see *Sparrow* v. *Bromage,* 83 Conn. 27, 28, 74 A. 1070 (1910). If the evidence indicates that all defendants acted intentionally and in concert, each defendant will be vicariously liable for the entire injury to the plaintiff.[15]

The trial court found the requisite degree of concert of action and, therefore, held all of the defendants jointly and severally liable. The court's conclusion of concert of action is amply supported by the record. The facts clearly show that all of the defendants carefully organized, called, and orchestrated the church meeting, prepared the texts, which were then read by one or more of the defendants at the meeting, and selected the slides reproducing various checking transactions which were then shown at the meeting. Furthermore,

---

[15] The defendants attempted only to avoid total liability by denying concert of action. The defendants did not attempt to limit their liability in any other way, such as arguing for the apportionment of damages. *Gutowski* v. *New Britain,* 165 Conn. 50, 327 A.2d 552 (1973); 2 Restatement (Second), Torts § 433 (B) (2); W. Prosser, Torts (4th Ed.) § 52, pp. 313–14; see also *Reilly* v. *DiBianco,* 6 Conn. App. 556, 566–73, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192, 193 (1986), for a discussion of apportionment of damages between joint tortfeasors who have committed concurrent but independent acts.

all of the defendants spoke at the meeting and acted as a unified whole. Therefore, we hold that the trial court's finding that the requisite concert of action existed was not clearly erroneous.

The defendants' final claim of error is that the plaintiff did not plead concert of action of the defendants. Although the plaintiff's complaint did not use the specific phrase "concert of action," the entire complaint is replete with allegations of facts relating to the defendants' unanimity of action and purpose.[16]

It is evident from the complaint that the defendants were on notice that the plaintiff's claims were directed against each and all of them for reputational harm caused by the defamatory statements. The facts as pleaded were sufficient to put the defendants on notice that at trial the plaintiff would rely on a theory of concerted action and, if successful, would be able to invoke the doctrine of joint and several liability.

---

[16] Specifically, the plaintiff alleged the following facts in her complaint: (1) All defendants were associated with the Union Baptist Church. Four of the defendants were on the board of trustees and the other defendant was employed by the board as auditor; (2) The plaintiff was notified by telegram, signed by two of the defendants that in the best interest of the church she should no longer participate as a member of the finance committee; (3) The plaintiff was subsequently engaged in a telephone conversation with one defendant who accused plaintiff of misappropriating church funds; (4) Another defendant informed the plaintiff that the accusations against her were not true and that a third defendant was aware of their untruthfulness; (5) At a joint meeting of the board of deacons and board of trustees, where all defendants were present, the slide pictures of checks, which purported to implicate the plaintiff, were shown along with accusatory verbal statements; (6) On several occasions, the defendant pastor told the church's general membership that there was an investigation under way to determine if church funds had been misappropriated; (7) The plaintiff received a letter signed by three defendants stating that she should resign from the finance committee in light of the apparent misappropriation of funds; (8) At the church meeting all defendants made defamatory written and oral statements and four defendants showed slides; and (9) The plaintiff suffered harm to her reputation on account of statements made by all of the defendants.

The entire trial was conducted on the theory that the plaintiff's action was against all of the defendants acting in concert. Where the parties at trial adopt a certain construction of the pleadings, the appellate courts should "review a case on the theory upon which it was tried and decided in the trial court." *Lashgari* v. *Lashgari,* 197 Conn. 189, 196, 496 A.2d 491 (1985); *U.S. Fidelity & Guaranty Co.* v. *Metropolitan Property & Liability Ins. Co.,* 10 Conn. App. 125, 126, 521 A.2d 1048 (1987); W. Maltbie, Conn. App. Proc. § 42.

There is no error.

In this opinion the other judges concurred.