[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (#106) DEFENDANT'S MOTION TO STRIKE
The defendant has moved this court to strike the Third, Fourth, Fifth and Eighth Counts of the plaintiff's Revised Complaint.
AS TO THE THIRD AND FOURTH COUNTS:
The Third and Fourth Counts allege slander per se. The alleged defamatory statements were broadcast as part of a television newscast. The defendant argues that as part of a broadcast, the statements are subject to the law regarding libel but not slander.
In the past, our courts have held that prepared statements broadcast over the radio, such as speeches and scripted newscasts, are generally categorized as libel rather than slander. See Charles Parker Co. v. Silver City Crystal Co.,142 Conn. 605 (1955). There are more recent cases which indicate that such characterization is not axiomatic. Statements made at a church meeting which were contained in a prepared text have been recognized as being both slander and libel. Miles v. Perry,
CT Page 1432511 Conn. App. 584 (1987).
An important factor for the court was the permanency of the defamatory speech. "It is the permanency or the perpetuation of the defamatory speech that is integral to the classification as either slander or libel. The reading from the prepared texts coupled with the display of the visual aids . . . has greater capabilities of harm than does merely the spoken word . . . The trial court correctly classified the defamatory remarks as libel and slander." (Citation omitted; internal quotation marks omitted.) Id., 601.
The Miles court noted the difficulty in labeling broadcasts as libel or slander, "[t]he distinction between libel and slander, however, has become blurred by the ability of modern communications, such as radio and television, to widely disseminate the spoken word." Id. That is readily apparent to even the most casual television viewer who is now accustomed to both live and videotaped broadcasts, frequently augmented by instant replay and often simulcast over television and radio to a potentially global audience by satellite. Technologically, the permanency and perpetuation of defamatory speech is almost without limits.
There is no controlling law precluding a plaintiff from pursuing a slander claim arising out of a television broadcast.
For the foregoing reasons, the defendant's motion to strike Count Three and Count Four sounding in slander on the ground that slander does not apply to television broadcasts is hereby denied.
AS TO THE FIFTH COUNT:
The defendant has moved the court to strike the Fifth Count of the Plaintiff's revised complaint for his failure to specify which of the four recognized types of invasion of privacy the defendant has purportedly committed. "[T]he law of privacy has not developed as a single tort, but as a complex of `four distinct kinds of invasion of our different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'" Prosser, Torts (4th Ed. 1971) Sec. 117, p. 804, as cited in Goodrich v. Waterbury-Republican American, Inc.,188 Conn. 107, p. 127-128, (1982). CT Page 14326
In the present case, the plaintiff failed to specify which category of invasion of privacy he is asserting. In his memorandum in opposition to this motion the plaintiff asks the court to infer that he is asserting invasion of privacy by false light (publicity that places the other in a false light before the public). While he has alleged the untruthfulness of the publication and misrepresentation of character, he has failed to allege other necessary elements of invasion of privacy by false light. In order to establish invasion of privacy by false light, the plaintiff must show "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." 3 Restatement (Second) Torts Sec. 652E, as cited in Jonap v. Silver, 1 Conn. App. 550,557-558 (1984). See also, Goodrich v. Waterbury American, Inc.,supra.
For the foregoing reasons, the defendant's motion to strike Count Five is granted.
AS TO COUNT EIGHT
The defendant alleges that the Connecticut Unfair Trade Practices Act (CUTPA) does not apply to television broadcasts. While there is no controlling law on this issue, in Cascia v.Cook Inlet Communications Co., Superior Court, Judicial District of Waterbury, Docket No. 109126, 10 CONN. L. RPTR. 429 (Nov. 29, 1993) (McDonald, J.), the court held that CUTPA did not apply to an allegedly defamatory television broadcast.
The plaintiff cites Larsen Chelsea Realty Co. v. Larsen,232 Conn. 480 (1995), for the proposition that CUTPA should be broadly construed. In Larsen, the court discussed the scope of CUTPA and noted that it extends beyond a consumer relationship;id., 496-499; but stated that it "applies to a broad spectrum ofcommercial activity." (Emphasis added.) Id., 492.
Based on a careful reading of Larsen, CUTPA does not apply to the television broadcast in the instant case because there is not a significant commercial relationship between the parties. For that reason the motion to strike the Eighth Count is hereby granted. CT Page 14327
By the Court,
Joseph W. Doherty, Judge.