[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
The plaintiff, Imad Hamzi, commenced this action by service of his two count complaint dated May 23, 1996, and returnable June 25, 1996. Plaintiff filed a revised complaint on January 3, 1997.
In the first count of the revised complaint, plaintiff alleges that defendant, William B. Goldstein, M.D., in his capacity as Chairman of the Department of Radiology of defendant Danbury Hospital, libeled the plaintiff in a May 26, 1994 memorandum to first floor radiology technologists. In the second count, plaintiff alleges that defendant, Danbury Hospital, is vicariously libel for defendant Goldstein's alleged libelous conduct. The revised complaint claims general damages, and the following actual damages: "pecuniary loss in terms of lost wages and medical expenses." Defendants filed their answer to the revised complaint on February 6, 1997. The matter was tried to the court on December 9, 18 and 22, 1998, and both sides filed briefs on January 19, 1999.
II. FACTS
CT Page 1258
On Friday, May 20, 1994, the plaintiff was employed by Danbury Hospital as a nurse anesthetist and was working at the Danbury Hospital. On that day, the plaintiff was called to the hospital's emergency room because his three and a half year old son, Rawad Hamzi, had been brought there for treatment of a right arm fracture resulting from a fall at day care. During the course of Danbury Hospital's treatment of Rawad Hamzi, a series of x-rays of the boy's right elbow and wrist were ordered by the emergency room physician. Vanessa Saphier, a radiology technologist, working in the hospital's Department of Radiology, was responsible for obtaining these x-rays. The plaintiff's son started crying during the x-ray process. The plaintiff and Vanessa Saphier became involved in a disagreement over the manner in which the x-rays were being taken. Mr. Hamzi was difficult during this dispute and his behavior upset Vanessa Saphier to the point that she was fearful of her physical safety. Ms. Saphir testified that she was so fearful of Mr. Hamzi and for her safety that she had someone escort her out to her car for a number of days following the incident involving Mr. Hamzi. According to Linda Testa, a supervisor in the Radiology Department, Mr. Hamzi told her that he was so upset with Ms. Saphier that he would have "beat the [expletive deleted] out of her had she been a man." At trial, the plaintiff heatedly denied making this statement.
On May 26, 1994, defendant, Dr. Goldstein, published the following memorandum to first floor radiology technologists:
Handling abusive individuals
 From time to time you may encounter abusive individuals who are more difficult to deal with than usual. When you recognize this type of situation, get help. Ask fellow technologists, the radiologist on duty, or the emergency room physicians for assistance. If necessary, call hospital security.
 Sometimes family members may be abusive to you because in fact they abused their child and are trying to demonstrate extra concern. At other times they may not have been as caring as they should for an elderly parent and guilt motivates the behavior. Probably the most common cause is substance abuse.
 DON'T HESITATE TO GET HELP WHEN NECESSARY. [Exhibit 6.]
CT Page 1259
This memorandum was prepared in response to safety concerns Dr. Goldstein's radiology staff had brought to his attention in his capacity as Chairman of the Radiology Department. The subject memorandum was posted in the first floor radiology area. At the time that the memorandum was prepared, the plaintiff did not know Dr. Goldstein. Dr. Goldstein testified that he was motivated, in part, to write the memorandum by his concern for the staff's safety and believed that he had an obligation as Chairman of Radiology Department to advise employees to get help in dealing with abusive patients. He also testified that he wrote the memorandum for educational purposes since his department runs a training program for radiology technicians and that students enrolled in the program are young and inexperienced about dealing with patients in an emergency room setting.
The plaintiff left the employ of Danbury Hospital on May 30, 1994 due to a back disability. On or about September 22, 1994, Dr. Goldstein received a letter dated September 22, 1994 from Mr. Hamzi's attorney, Guy DePaul. Attorney DePaul's letter requested, pursuant to § 52-237 of the Connecticut General Statutes, that Dr. Goldstein publish a written retraction of the subject memorandum. In response to Attorney DePaul's letter, Dr. Goldstein prepared a memorandum dated September 26, 1994 from Dr. Goldstein to "1st Floor Radiology Technologists" regarding the subject of
"Handling Abusive Individuals." The memorandum reads as follows:
 My Memorandum dated May 26, 1994, concerning the above subject referred to certain instances where child or substance abuse may be a motivating factor.
 That reference was not intended to refer to any specific individual nor was it intended to imply that child or substance abuse is always a motivating factor in every
instance. There may be, of course, other reasons why an individual becomes upset, particularly when an injury to a family member is involved.
 We regret if the May 26, 1994 memorandum may have created a wrong impression. [Exhibit 8.]
Plaintiff acknowledged, by way of letter from plaintiff's CT Page 1260 counsel dated November 11, 1994, "the memorandum posted by Dr. Goldstein dated September 26, 1994 to be a retraction in accordance with section 52-237 of the Connecticut General Statutes." (Exhibit 11.)
The plaintiff's response to Dr. Goldstein's second memorandum was recorded on Dr. Goldstein's office answering machine on September 30, 1994. The transcript reads as follows:
 Dr. Goldstein, this is Imad Hason Hamzi, I'm not gonna let a divorced [expletive deleted] like you dating a girl half his age talk to me about family values and accuse me of being an abusive parent and drug abuser just because I complained about my son being mistreated in your department. And just because you put up another stupid memo that doesn't mean your problems are over actually they've just begun, you [expletive deleted.] [Exhibit 9.]
Plaintiff offered no testimony to support his claim for lost wages. The testimony adduced at trial demonstrated that the plaintiff stopped working on May 30, 1994, four days after the posting of the subject memorandum, as a result of a back injury, and remains totally disabled to this day as a result of that injury.
III. DISCUSSION
Defamation is defined as "that which tends to injure reputation, to diminish the esteem, repute good will or confidence in which the plaintiff is upheld or to excite adverse derogatory or unpleasant feelings or opinions against him." Black's Law Dictionary, 5th Ed., p. 217. A defamatory statement made in writing constitutes libel. Charles Parker Co. v. SilverCity Crystal Co., 142 Conn. 605, 611 (1955). A prima facie case of defamation is made when the plaintiff demonstrates that: (1) a defamatory statement was made by the defendant; (2) the defamatory statement identifies the plaintiff to a reasonable reader; (3) the defamatory statement is published to a third person; (4) the plaintiff's reputation suffers injury. Prosser, William L., Law of Torts, 4th Ed., West Publishing Co.
A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to defer third persons in a society from dealing CT Page 1261 with him. Restatement, Second Torts § 559.
The plaintiff must establish each element of defamation by a preponderance of credible admissible evidence. Lizotte v. Welker,45 Conn. Sup. 217, 220 (1996).
In Connecticut, written defamation is characterized as either "libel per se" or "libel per quod." Battista v. UnitedIlluminating Co., 10 Conn. App. 486, 491, cert. denied,204 Conn. 802-803 (1987). "Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." Id. at 491-92. A libel per se statement must charge a crime involving moral turpitude or lack of skill in one's profession, which is likely to injure the plaintiff in that profession. Battista, supra,10 Conn. App. 492-93.
The determination of whether or not a publication is libelous per se is a question of law to be determined by the court. Milesv. Perry, 11 Conn. App. 584, 602 (1987). This determination is to be made upon the face of publication itself. The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose be varied or enlarged by innuendo.Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 571
(1950). A statement must be taken in the context in which it was said and would be understood by the average listener. Brown v.K.N.D. Corporation, 205 Conn. 8, 15 (1987).
"A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. When the plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover." Battista v. UnitedIlluminating Co., supra, 10 Conn. App. 491. Connecticut recognizes that libel per quod may occur by innuendo. Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 316 (1984). However, "it is well settled, that the meaning of the words laid can not be extended by the innuendo [alleged]. . . ." Camp v. Martin,23 Conn. 86, 92 (1854). Whether the statement complained of is reasonably capable of being interpreted as libelous, is a question of law for the court's determination. See Charles ParkerCo. v. Silver City Crystal Co., supra, 142 Conn. 612.
Connecticut General Statutes § 52-237 limits a CT Page 1262 plaintiff's recovery for libel to actual damages alleged and proven at trial, "unless the plaintiff proves either malice in fact or that the defendant, after having been requested by him in writing to retract the libelous charge, in as public manner as that in which it was made, failed to do so within a reasonable time. . . ." Connecticut General Statutes § 52-237. Malice in fact has been defined as an improper or unjustified motive in publishing the statement. See Proto v. Bridgeport HeraldCorporation, supra, 136 Conn. 564. Plaintiff bears the burden of proving malice in fact by a preponderance of the evidence. Id.
Dr. Goldstein testified that he posted the memorandum in question (Exhibit 6) in response to the written statements obtained concerning the incident on May 20, 1994. Defendant Goldstein also stated that the May 26, 1994 memorandum was posted to deal with a general problem of abusive individuals. The plaintiff contends that the memorandum is libelous because it suggests that he is an abusive individual who abused his child. Defendant argues that this memorandum was published to address safety concerns, never mentions the plaintiff by name, and deals with other issues such as care of elderly parent and substance abuse, which do not relate to the plaintiff's incident.
The plaintiff cannot recover on a libel per se claim, since the May 26, 1994 memorandum does not name or mention the plaintiff, Imad Hamzi. Plaintiff essentially concedes this point by alleging innuendo in his revised complaint, to wit: "Said memorandum was referring by innuendo to the Plaintiff, Imad Hamzi. . . ." Revised Complaint, par. 6, dated January 3, 1997. In view of the fact that a determination of libel per se is to be made upon the face of the publication itself and cannot be varied or enlarged by innuendo, the libel per se claim must fail. SeeProto v. Bridgeport Herald Corporation, supra, 136 Conn. 565-66.
The next issue is whether or not the plaintiff has sustained his burden of proof regarding the libel per quod allegation. In this regard, the court notes at the outset that there was no evidence to the effect that the plaintiff ever abused his child or abused drugs. The incident in question resulted when the plaintiff's child was injured in a fall. The question, however, is whether the plaintiff proved, by a preponderance of credible evidence, that he should prevail on the libel per quod allegation.
The only non-party witness who testified that he believed CT Page 1263 that the subject memorandum referred to the plaintiff was Raboh Ghannan who was a fellow student of Mr. Hamzi's wife in the Danbury Hospital radiology program and had socialized with the Hamzis at their house on two occasions. Mr. Ghannan was not present at the time of the incident. Four members of the hospital staff testified that they did not believe that the memorandum referred to the plaintiff.
The plaintiff claims that Dr. Goldstein wrote the memorandum in response to a letter which the plaintiff wrote to the defendant Goldstein on May 15, 1994. However, the testimony adduced at trial indicated that Dr. Goldstein did not receive Mr. Hamzi's letter until May 30, 1994, four days after the memorandum was published.
The May 26, 1994 memorandum was intended to address safety concerns confronting Dr. Goldstein's radiology staff. The subject memorandum is directed to "1st Floor Radiology Technologists." The topic of the memorandum was "Handling Abusive Individuals." The subject memorandum does not either refer to any individual in particular, or mention any name, but rather advises radiology personnel to get help whenever they encounter any abusive individuals. The memorandum was prompted by safety concerns which were brought to Dr. Goldstein's attention by his staff. He wrote the memorandum addressing these concerns by advising his staff to get help whenever an abusive situation occurred. The memorandum also contained examples of elderly care and drug abuse which had no relationship to Mr. Hamzi's incident. The cause of the injuries to the plaintiff's son was not in question. The plaintiff's son had been injured in a fall while the plaintiff was at work.
IV. CONCLUSION
Based upon the foregoing, the court finds that the plaintiff has not sustained his burden of proof to the effect that the statements contained in the memorandum were libelous per quod. The statements complained of are not reasonably capable of being interpreted as libelous. Therefore, judgment will enter in favor of the defendants.
___________________________ Dennis G. Eveleigh, Judge