[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 30, 1998, a quiz was administered in the Nursing 310/Acute Focus course by Adjunct Nursing Professor Annette Finkelstein at Western Connecticut State University, Danbury, Connecticut. The quiz in question was prepared by Professor Mary Ann Riley, but proctored by Ms. Finkelstein, who then was to give a guest clinical lecture for the second half of the class. The plaintiffs and defendants were all nursing students in their senior year at the university, and they all participated in the quiz. On December 9, 1998, the defendant Anderson composed a letter that accused the plaintiffs of cheating on the quiz, which all the other named defendants signed, and then sent it to Professor Riley and the nursing department faculty at the university.[1]
Further, on December 29, 1998, the defendant Anderson prepared and sent a second letter, this time to Dr. Francis J. Muska, vice president of student affairs at the university. In essence, the defendant republished her first letter, but then urged the administration of the university to "thoroughly investigate the situation." Copies of the letter were sent to several additional persons in the nursing department as well as to other members of the university administration.
The student handbook of Western Connecticut State University for 1997 and 1998, on pages 52 and 53, detailed the elements for Class A violations of student rights and responsibilities. Class A violations include all forms of cheating and plagiarism. The "Student Procedural Rights" on pages 56-57 of the handbook, state that any member of the university community may file a complaint and that the complaint must be in writing and filed with the vice president for student affairs "within 90 days of the date of the alleged violation." Those same pages further outline that only if, after evaluation by a designated representative, there is probable cause will a complaint warrant further investigation by means of a hearing. (Page 57.)
Upon investigation and despite having scheduled a probable cause CT Page 2541 hearing to be held February 26, 1999, Dean Wilds wrote the plaintiffs on February 23, 1999, and informed them that she had investigated the complaint and determined "that there is not enough probable cause to invoke a Class A violation hearing." She then rendered the matter closed.
On March 1, 2002, the plaintiffs complained to Dr. Walter Bernstein, dean of professional studies, that they were being singled out by professors who continued to make references to the alleged cheating incident. As a result, Dr. Bernstein sent an E-mail to faculty telling the professors/faculty to "no longer reference the case or refer to these students along these lines."
The attorney for defendant Theresa Anderson withdrew his appearance on June 22, 2002. Laura Schurer, one of the original plaintiffs, withdrew her complaint against all defendants on September 29, 2002.
The determination before the court is whether or not the defendants have a qualified or conditional privilege or right to report what they suspect to be academic misconduct or whether their communications are actionable according to the law of law of libel per se.
"Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." (Internal quotation marks omitted.) Lyons v. Nichols,63 Conn. App. 761, 767, 778 A.2d 246 (2001). "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the [defamation] caused him." (Internal quotation marks omitted.) Devito v. Schwartz, 66 Conn. App. 228, 234-35,784 A.2d 376 (2001). "Whether a publication is libelous per se is a question for the court." (Internal quotation marks omitted.) Battista v.United Illuminating Co., 10 Conn. App. 486, 492, 523 A.2d 1356 (1987).
"A qualified or conditional privilege arises out of an `occasion,' such as, when one acts in the bona fide discharge of a public or private duty . . . Privilege is an affirmative defense in a defamation action and must, therefore, be specifically pleaded by the defendant . . . It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty . . . It is a question of fact for a court or a jury, however, to determine whether the defendant has abused a conditional privilege . . . A conditional or CT Page 2542 qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith . . . Therefore, a conditional privilege may be recognized only where the statement is made in good faith, without malice, in an honest belief in the truth of the statement, and in discharge of a public or private duty." (Citations omitted.) Miles v. Perry, 11 Conn. App. 584, 594
n. 8, 529 A.2d 199 (1987); see also Gaudio v. Griffin Health ServicesCorp. , 249 Conn. 523, 556, 733 A.2d 197 (1999).
The court finds that the defendants' communication was privileged because it was made in accordance with the policies outlined in the university student handbook. The university's student handbook section on what is proscribed conduct as well as students' rights to report and defend academic misconduct is very definite. It states that a member of the university community has a right to file a complaint alleging academic misconduct with the university administration.
Neither the defendants' first letter dated December 9, 1998, despite being misdirected to improper parties, nor their letter dated December 29, 1998 properly directed to the vice president for student affairs, were outside the scope of their qualified privilege to report perceived academic misconduct. While the court finds that some of the language of the second letter was not needed in order to adequately allege a complaint against the plaintiffs, this communication was nonetheless made within the guidelines of the student handbook and, as such, is protected as a qualified privilege. Further, because there was no evidence adduced at trial that anyone other than the appropriate university officials ever received publication of the second letter, the court finds that the defendants did not vitiate their qualified privilege. In sum, a member of the university community cannot be held legally liable for adhering to the procedure established by the university where all the parties to this case were enrolled.
Judgment for the defendants.
Upson, J.