[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Presently before the court is the motion for summary judgment filed by the defendant; the motion should be denied.
On January 2, 1991, the plaintiffs, Lawrence Brophy, John Ahern and Frank Perrotti, filed a two count revised complaint against defendant Ira Chernes, d/b/a Chernes Home Inspections.
In the first count, the plaintiffs allege that the plaintiffs had contracted to sell their house and property to Salvatore and Erica Ferrante, that the plaintiffs built the house as general contractors, and that the contract permitted the Ferrantes to have the property inspected. The plaintiffs allege that the defendant performed the inspection for the Ferrantes, and that the defendant made a number of false statements regarding the quality of construction of the house. The plaintiffs allege that the defendant published the false statements in an inspection report, and that the publication was made maliciously, negligently and/or with reckless disregard for the truth. The plaintiffs allege that the Ferrantes read the defendant's report, and decided not to purchase the plaintiffs' property due to the false statements. The plaintiffs allege that the defendant's defamation has injured their reputation and caused them to suffer mental anguish.
In the second count, the plaintiffs reallege their allegations of the first count, and allege further that the defendant intentionally made the defamatory statements in order to impair or destroy the plaintiffs' contract and business relationship with the Ferrantes. The plaintiffs allege that the defendant's conduct was the proximate cause of the destruction of the plaintiffs' business relationship and contract with the Ferrantes, and that the plaintiffs lost the expectancy of economic gain as a result of the defendant's conduct. Attached to the complaint is a copy of the contract between the plaintiffs and the Ferrantes.
On May 13, 1991 the defendant filed an answer and five special defenses. As to both counts, the defendant raises the special defense that: "The gist of the alleged libelous matter was true." As to the first count, the defendant raises the special defenses that the defendant had a privilege to publish his statements, and that the plaintiffs consented to the defendant's publication of his statements. As to the second count, the defendant raises the special defense that the "defendant had a privilege to be involved in the alleged contract between the parties." CT Page 7442
On May 20, 1991 the plaintiffs filed a reply to the defendant's special defenses.
On April 7, 1992 the defendant filed a motion for summary judgment, a memorandum of law in support thereof, and supporting affidavits. The grounds for the defendant's motion are that the plaintiffs consented to the defendant's publication of his inspection report, that the publication was privileged, and that the defendant's statements did not induce the Ferrantes to refuse to purchase the plaintiffs' property.
On May 22, 1992 the plaintiffs filed a memorandum in opposition to the motion for summary judgment, affidavits and related documents.
"Summary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 384. The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact." Nolan v. Borkowski, 206 Conn. 495, 500. The court must view the evidence in the light most favorable to the nonmovant. Id. "`A "material" fact has been defined . . . as a fact which will make a difference in the result of the case.'" Catz v. Rubenstein,201 Conn. 39, 48.
The defendant argues that the plaintiffs' consent to the publication of defamatory matter is a complete bar to any action against the defendant. The defendant argues that by including an inspection provision in the sales contract, the plaintiffs consented to the publication of the defendant's statements, because "it was to be expected by the [contract's inspection provision] that the inspector would inform his clients of his findings."
The plaintiffs argue that by agreeing to the inspection provision, the plaintiffs did not consent to the publication of defamatory statements, they merely consented to the reporting of an inspector's "honest findings".
"It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." United Oil Co. v. Urbar Redevelopment Commission, 158 Conn. 364, 376.
In the present case, the inspection provision states: CT Page 7443
"8. PHYSICAL INSPECTION CONTINGENCY;
a. Inspection period after contract 7 days
b. Notification period after inspection period 3 days"
The contract does not provide any information regarding whether the plaintiffs intended to consent to the publication of the allegedly defamatory material; genuine issues of material act exist regarding whether or not the plaintiffs consented to the publication of the defendant's allegedly defamatory statements.
The defendant argues that his publication was privileged, because his publication was made in the course of the discharge of his duty to the Ferrantes.
The plaintiffs argue that even if the defendant's publication were privileged, material questions of fact exist as to whether or not the defendant abused his privilege.
Privilege is an affirmative defense in a defamation action. Miles v. Perry, 11 Conn. App. 584, 594 n. 8. "The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." Id., 595. Privilege does not exist "where the defamatory remarks are activated by malice, improper motive, or lack of good faith in making the statement." Id. Whether the motive for the defamatory remarks was improper is a question of fact. Id., 594 n. 8.
The defendant states in his affidavit of June 8, 1992 that, prior to his house inspection, he did not know nor had he ever heard of the plaintiffs, and that he had no reason to comment or the house's construction other than to protect the Ferrantes. However, in his affidavit of May 13, 1992, plaintiff Lawrence Brophy describes his encounter with the defendant during the house inspection:
 "When the inspection started it immediately became apparent that [the defendant] did not want my input, although I offered to explain the unique characteristics of the house. . . .
 Tension and anger on the part of [the defendant] and [Salvatore Ferrante's] uncle escalated with every word I said. The more angry they became, the more emotional both Dr. Salvatore Ferrante and his wife became. CT Page 7444 It got to the point where I was asked to let them walk through the house alone without my `interruptions'. . . .
 [The defendant] did not want the electrician's or heating contractor's input and ignored what they had to say. . . .
 [The defendant] said that he did not visually see how the roof was vented. I tried to explain that this . . . required an internal ventilation system. When I tried to explain how this worked and how it was constructed, [the defendant] turned his back on me and walked away. On this note, the inspection ended and the Ferante [sic] party left."
In another affidavit submitted by the plaintiffs in opposition to the defendant's motion, Ruth Rosenthal, the plaintiffs' real estate agent states: "The inspection and the [defendant] seemed to be going along in a normal manner except for the fact of the hostile attitude towards the [plaintiff] and the property itself."
These affidavits do not resolve the issue of whether the defendant's statements were activated by malice, improper motive or lack of good faith; a genuine issue of material fact exists as to whether the defendant's statements were privileged.
The defendant argues that he may not be held liable for tortious interference with contract because his statements did not induce the Ferrantes to break their contract with the plaintiffs. The defendant argues further that he may not be held liable for this tort because he did not act with an improper motive.
The plaintiffs argue that genuine issues of material fact exist regarding whether the defendant's statements caused the Ferrantes to break the contract.
 "The essential elements of [a claim of tortious interference with contract] include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), `knowing of that relationship, intentionally sought to interfere with it; and, as a result the plaintiff claimed to have suffered actual loss' . . . .
"`For a plaintiff successfully to prosecute CT Page 7445 such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously."'"
Solomon v. Aberman, 196 Conn. 359, 364-65.
The defendant argues that there is no genuine issue of material fact regarding whether the plaintiffs suffered an actual loss as a result of the defendant's allegedly defamatory statements, and cites the affidavit of Salvatore Ferrante. Ferrante states in his affidavit that the decision not to purchase the plaintiffs' property was not made on the basis of the defendant's inspection report, but was due to structural defects in the driveway.
In opposition, the plaintiffs cite the affidavit of Ruth Rosenthal, in which Rosenthal states that she was present at the inspection, and that the driveway was one of the areas of concern of the Ferrantes, but was not a major issue discussed during the inspection.
The issue of whether the defendant's statements caused the plaintiffs' loss involves consideration of the Ferrantes' reasons for not purchasing the plaintiffs' property; the affidavits submitted by the parties dispute the Ferrantes' stated reasons. Pursuant to the holding of United Oil Co. v. Urban Redevelopment Commission, supra, summary judgment is inappropriate for issues involving motive or intent.
The defendant argues further that the tort of interference with contract requires that the defendant act with an improper motive, and that this element is not satisfied because the defendant's only motive was to protect his clients. As stated previously, genuine issues of material fact exist regarding whether the defendant's statements were made maliciously.
Accordingly, the motion for summary judgment is denied.
RONALD J. FRACASSE, Judge