[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
This action arises out of the discharge of the plaintiff, Virginia Daley ("Daley"), from her position with the defendant, CT Page 7843 Aetna Life Casualty ("Aetna"). In her eleven-count Revised Complaint, dated March 4, 1994, Daley alleges: retaliatory discharge (count one); wrongful discharge (count two); negligent misrepresentation (count three); fraudulent misrepresentation (count four); tortious interference with employment relationship (against Aetna supervisor and co-defendant Michele Flynn) (count five); defamation (count six); negligent investigation and supervision (count seven); and loss of mother-child consortium (count eleven). Counts eight and nine allege, respectively, negligent representation and loss of mother-child consortium on behalf of B. Patrick Daley ("Patrick"), Daley's son. Count ten alleges loss of family consortium by Brian J. Daley, Daley's husband.
On March 21, 1994, the defendants filed a Motion to Strike counts one, two, five, six, eight, nine and eleven of the plaintiffs' Revised Complaint on the grounds that each fails to state a claim upon which relief can be granted. The plaintiffs oppose this Motion. The parties have filed memoranda in support of their respective positions.
FACTS
The following are the facts as alleged in the plaintiffs' Revised Complaint. On October 21, 1985, Aetna hired Daley to work in its Hartford office. Between 1985 and August 1991, Daley received good performance reviews as well as letters of appreciation, raises, bonuses and promotions. On July 12, 1991, Daley gave birth to co-plaintiff Patrick, and was out on maternity leave through September 19, 1991. Prior to and after returning to work, Daley requested that she be allowed to work at home one day per week. Her supervisor, co-defendant Michele Flynn ("Flynn"), denied this request on several occasions.
On March 9, 1992, Flynn placed Daley on warning for poor work performance. On October 21, 1992, she placed Daley on probation. Daley alleges that the taking of these steps was merely a pretext for her subsequent discharge.
On November 9, 1992, Aetna's publication, "AetnaSphere," included an article about Aetna Chairman Ron Compton receiving a "Good Guy" award from the National Women's Political Caucus for his support of model family and medical leave programs. Upon reviewing this article, Daley wrote an internal CT Page 7844 memorandum to Compton stating that although Aetna consistently did a good job applying short-term disability to maternity leave, Aetna's performance was far from award-winning when it came to offering flexible family work arrangements. The memorandum detailed, inter alia, Daley's dissatisfaction with her own experiences at Aetna with respect to alternative work arrangements. On February 10, 1993, Daley's employment with Aetna was terminated.
DISCUSSION
A motion to strike "challenges the legal sufficiency of a pleading." Mingachos v. CBS, Inc., 196 Conn. 91, 108
(1985). Grounds for a motion to strike arise, inter alia, when any complaint (or count thereof) fails to state a claim upon which relief can be granted. Practice Book § 152(1); seeGordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988). In ruling on a motion to strike, the court "must construe the [pleading] in the manner most favorable to the pleader." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,472 (1980). "[I]f the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." See Alarm Applications Co. v.Simsbury Volunteer Fire Co. Inc., 179 Conn. 541, 545 (1980). A motion to strike "admits all facts well-pleaded; [but] it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.)Mingachos v. CBS, Inc., supra at 108.
A. Count One — Retaliatory Discharge
In count one of her Revised Complaint, Daley alleges that she was discharged in retaliation for her memorandum to Aetna Chairman Compton, and thus in violation of General Statutes § 31-51q, which prohibits employers from disciplining or discharging an employee "on account of the exercise by such employee of rights guaranteed by the First Amendment to the United States Constitution or Section 3, 4 or 14 of Article First of the Constitution of the State . . . ." In order to plead a violation of Section 31-51q, the plaintiff must allege: (1) that she was exercising rights protected by thefirst amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that she was fired "on account of" her exercise of such rights; and (3) that her exercise of first amendment or equivalent state CT Page 7845 constitutional rights did not substantially or materially interfere with her bona fide job performance or with her working relationship with her employer. See Vince v. Worrell, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 319386 (July 14, 1992, Schaller, J.).
The defendant here argues that even if it is found to have discharged the plaintiff because of her memorandum to Chairman Compton, it cannot thereby be held to have violated Section 31-51q because the plaintiff's writing and sending of that memorandum was not an exercise of her constitutional right to freedom of speech. An employee's statements, it correctly notes, are not constitutionally protected when they relate exclusively to matters concerning the employee's personal interests, as opposed to matters of public concern. See Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684
(1983). Here, claims the defendant, the plaintiff's memorandum was not constitutionally protected speech because it was nothing more than a private complaint about her personal treatment as an Aetna employee.
Whether or not an employee's statements are constitutionally protected depends upon their content, their form, and the context in which they are made. Id., 147-48. If they relate to matters of public concern and are voiced in such a manner as to contribute to the public discussion thereof, they are constitutionally protected. If, by contrast, they relate solely to the employee's personal employment situation, and/or are so communicated as to affect only the private adjustment of the employee's personal grievances, they are not constitutionally protected. Vince v.Worrell, supra (holding that whether or not an employee's statements constitute constitutionally protected speech "ultimately turns upon whether the speaker is exercising his or rights as a citizen, or as an employee, expressing grievances with the circumstances of his or her employment.")
The federal case of Callaway v. Hafeman, 832 F.2d 414
(7th Cir. 1987), illustrates this distinction. In that case an employee of a public school district alleged that she was fired because she had complained to school district administrators that she was being sexually harassed by her supervisor. Although the Court recognized that sexual harassment is inherently a matter of public concern, it held as follows that the employee's complaint was not CT Page 7846 constitutional protected speech:
 [The plaintiff's] communications were always made in a context relating to the resolution of her personal dispute with [the harasser]. While the content of [the plaintiff's] communications touched upon a matter of public concern generally, she was not attempting to speak out as a citizen concerned with problems facing the school district; instead, she spoke as an employee attempting to resolve her private dilemma.
Id., 417.
The defendants argue that the memorandum here in question concerned itself exclusively with Daley's personal interests, and was therefore not protected.
Upon a close review of the plaintiffs' complaint, it cannot fairly be concluded that Daley's memorandum to Compton was solely an effort to resolve her personal dispute with Aetna. Her expressed concerns though surely animated in the first instance by upsettedness over her personal treatment by Aetna, took the form of a general complaint about the differences between Aetna's public position and private policies concerning flexible family work arrangements. Daley's memorandum, as described in her Revised Complaint, read in part as follows:
 Realistic options for Aetna employees to meet their family obligations without sacrificing their careers are not generally available today. To continue to represent to Aetna employees and the national media that these options are available is unconscionable. If Aetna cannot keep its promises to its employees, how can Aetna earn the trust of the general public?
Plaintiffs' Revised Complaint, ¶ 13.
Taking the facts pleaded in the light most favorable to the plaintiff, and considering all well-pleaded facts as true, Daley's memorandum can fairly be construed as a generalized complaint about Aetna's allegedly misleading public image rather than as a plea to honor her own request CT Page 7847 for a flexible work schedule. If, then, as Daley alleges, she was discharged because she wrote and sent the memorandum in question, she will succeed in proving a violation of Section31-51q. Accordingly, the defendants' motion to strike count one of the plaintiffs' Revised Complaint is hereby denied.
B. Count Two — Wrongful Discharge
In the second count of her Revised Complaint, Daley pleads that Aetna wrongfully discharged her in violation of the "public policy of the State of Connecticut not to discriminate against individuals in employment because of their choice to have and raise children and the public policy to promote employment opportunities for women by encouraging family-friendly workplace policies." ¶ 24. The defendant argues that the plaintiff has failed to allege a violation of public policy cognizable under Connecticut law.
The doctrine of wrongful discharge, which provides that an employer may be liable for discharge of an at-will employee where the discharge contravenes a clear mandate of public policy, is a narrow exception to the general rule that employment is terminable at will. See Sheets, supra at 474;D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 211 n. 1 (1987). Given the inherent vagueness of the concept of "public policy," it is often difficult to define precisely the contours of this exception. Morris v.The Hartford Courant Co., 200 Conn. 676, 680 (1986). An employee must allege, however, that her dismissal contravened some judicially conceived notion of public policy, or an explicit statutory or constitutional provision. Id., 680.
The public policy not to discriminate in employment against individuals who choose to have and raise children is assuredly one that has been adopted in Connecticut. In General Statutes § 46a-60 (a)(7), for example, Connecticut has legislated a wide range of protections for pregnant women who wish to continue working during pregnancy and to maintain their jobs and benefits thereafter. By adopting that legislation, Connecticut became one of the first States to comprehensively protect the rights of pregnant workers.
Taking all well-pleaded facts as true, Daley was discharged because she chose to have and raise children. Because such conduct, if proven, would violate the long CT Page 7848 standing public policy of this State, the defendants' motion to strike count two must be denied.
C. Count Five — Tortious Interference
In her fifth count, Daley alleges that by recommending her termination, co-defendant Flynn tortiously interfered with Daley's employment relationship with Aetna. The facts alleged indicate that Flynn was Daley's supervisor and an agent of Aetna acting within the scope of her employment when she recommended that Daley be discharged.
Connecticut has long recognized a cause of action for tortious interference with contract rights or other business relationships. See Blake v. Levy, 191 Conn. 257, 260 (1983). To pursue a claim for tortious interference with employment, a plaintiff must allege that the defendant intentionally interfered with or disturbed her employee-employer relationship, either for some improper motive or by some improper means. See Blake v. Levy, supra at 260-62. Furthermore, this tort arises only where a third party interferes with a beneficial relationship between the plaintiff and another party. See Restatement (Second) of Torts § 766 (1977) ("one who intentionally and improperly interferes with the performance of a contract between another and a third person . . . is subject to liability"); W. Page Keeton et al., Prosser and Keeton on the Law of Torts, ch. 24 § 129 (5th ed. 1984) ("tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another person.")
In Murray v. Bridgeport Hospital, 40 Conn. Sup. 56
(1984), a discharged employee brought suit against two executive supervisors of his former employer for tortious interference. In striking this cause of action, the Court declared:
 An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the [employer] liable in tort for breaching its own contract. CT Page 7849
Id., 60-61. The Court went on to state that an agent can be held liable, however, for such interference or inducement if the agent failed to act legitimately within the scope of his duty, or improperly used the corporate power for personal gain. Id.
In the fifth count of the plaintiff's Revised Complaint there is no allegation that Flynn failed to act legitimately within the scope of her duties in recommending that Daley be fired, or that Flynn's actions were actuated by personal feelings against Daley. As a result, Daley's claim for tortious interference with employment is defective and must be stricken.
D. Count Six — Defamation
In count six of her Revised Complaint, Daley claims that defendant Flynn communicated defamatory statements about her to other Aetna managers. The defendants argue in their motion to strike that the plaintiff has "failed to allege that the communication was unprivileged and published to a third party," and therefore that that count should be stricken.
To prove defamation, a plaintiff must show that the defendant published or uttered an unprivileged, false and defamatory statement. See Strada v. Connecticut Newspapers,Inc., 193 Conn. 313, 316 (1984). A qualified privilege exists, however, for communications derogatory of the character or attributes of an employee if a defendant can prove: (1) an interest to be upheld; (2) a statement limited in its scope to this purpose; (3) good faith; (4) a proper occasion; and (5) a publication in a proper manner to proper parties only. Miles v. Perry, 11 Conn. App. 584, 595 (1987). It is for the court to determine, as a matter of law, whether the defendant made the statements while acting within this privilege. Id., 594 n. 8.
Privilege, however, is an affirmative defense which must be specifically pleaded by the defendant. Id., citingMonczport v. Csongradi, 102 Conn. 448, 450-51 (1925).
Thus, although the circumstances surrounding Flynn's alleged communications about Daley with in Aetna may ultimately be shown to have been such as to give support to a valid claim of privilege, such a defense has not yet been interposed in CT Page 7850 this case, and the plaintiff's failure anticipatorily to negate it cannot defeat her cause of action on a motion to strike. Accordingly, the defendant's motion to strike count six is hereby denied.
E. Count Seven — Negligent Investigation and Supervision
In count seven of her complaint, Daley alleges negligent investigation and supervision on the part of Aetna, claiming that Aetna made certain representations that it would follow certain disciplinary and evaluation policies, but nevertheless failed to use reasonable care in supervising, evaluating and terminating Daley's employment.
As previously noted, contracts of permanent employment and contracts of employment for an indefinite term are generally terminable at will. This reflects the view that an employer has the absolute right to run his business as he sees fit. See Somers v. Cooley Chevrolet, Co., 146 Conn. 627, 629
(1959). It follows that, prior to discharging an employee-at-will, an employer does not owe the employee a duty to investigate. Since the facts alleged do not indicate an employment relationship that would take Daley out of the at-will category, Aetna did not owe Daley a duty to investigate prior to discharging her. Therefore it cannot be held liable for negligent investigation. Accordingly, the defendants' motion to strike count seven of the plaintiffs' Revised Complaint is hereby granted.
F. Count Eight — Negligent Misrepresentation
In the eighth count of her Revised Complaint, Daley asserts a claim of negligent misrepresentation on behalf of her son, Patrick. Specifically, she claims that certain of Aetna's representations to her, in fact, constituted representations to her infant son. It is further alleged that these representations were negligent, and that Patrick suffered personal injury as a result of the "loss of parental care and guidance" which stemmed from Aetna's decision not to allow her to work at home one day per week." The defendants argue in their motion to strike that no representations were made to Patrick, and furthermore, that Patrick did not act in reliance of any alleged representations.
To establish a claim for negligent misrepresentation, a CT Page 7851 claimant must allege that he justifiably relied to his detriment on the alleged representations of the defendant. See D'Ulisse-Cupo v. Board of Directors, supra at 217-18. Counts three and four of Daley's Revised Complaint, which are not subject to this motion to strike, constitute actions arising from representations made by Aetna to Daley directly. The validity of these counts will be determined at a later stage of litigation. However, the contention that Aetna's internal policies and procedures could also be considered representations to her family, specifically to her infant son, is unsupported in law and contrary to common sense. According to Daley's own memorandum in opposition to this motion, Patrick had not been born at the time Aetna made most of its alleged representations. See Plaintiffs' Memorandum in Opposition to Motion to Strike, at 17. It follows that the facts, as alleged in the plaintiffs' complaint, do not support the proposition that Aetna made representations to Patrick, nor do they support the proposition that Patrick acted in reliance on these alleged representations. Therefore, the defendants' motion to strike the eighth count of the plaintiffs' Revised Complaint is hereby granted.
G. Count Nine — Loss of Parent/Child Consortium
In count nine of her Revised Complaint, the plaintiff alleges that "[a]s a result of Aetna's negligence, Patrick has been damaged by the loss of mother-child consortium." The defendants argue that no cause of action exists in Connecticut for loss of parental consortium.
Consortium is defined as the "[c]onjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation." Black's Law Dictionary 309 (6th ed. 1990). Although a few Connecticut Superior Court decisions have recognized a claim for loss of parental consortium; seeBeckwith v. Akus, 8 CSCR 364 (March 15, 1993, Hurley, J.);Henderson v. Micciche, 6 Conn. L. Rptr. 317 (May 1, 1992, Murray, J.); Kizina v. Minier, 5 Conn. L. Rptr. 481 (January 24, 1992, Santos, J.); the vast majority of superior court decisions have held that, in the absence of appellate direction to the contrary, the right to consortium does not extend to the parent-child relationship. see Giatrelis v.Kruss, 8 Conn. L. Rptr. 420 (March 31, 1993, Hadden, J.);Lesco v. Royal Glass of Connecticut, Superior Court, judicial CT Page 7852 district of New Haven, Docket No. 325997 (July 22, 1993, Zoarski, J.); Bachanlal v. Tindoy, Superior Court, judicial district of Middlesex, Docket No. 66667 (April 13, 1993, Higgins, J.); Finley v. Masiello Bus Co., 8 Conn. L. Rptr. 1, 3 (November 24, 1992, Rush J.); Reardon v. Middlesex Hospital,7 Conn. L. Rptr. 299, 300 (August 27, 1992, Hendel, J.); O'Hazov. Sousa, 7 Conn. L. Rptr. 62 (July 8, 1992, Langenbach, J.);Zlotoff v. Perugini, 6 Conn. L. Rptr. 426 (June 10, 1991, Gaffney, J.). In addition, although no appellate court in Connecticut has directly addressed this issue, several appellate courts have declared that a loss-of-consortium claim arises out of a civil contract of marriage, and therefore cannot be extended to the child-parent relationship. See Mahoney v. Lensink, 17 Conn. App. 130, 141,550 A.2d 1088 (1988), rev'd on other grounds, 213 Conn. 548,569 A.2d 518 (1990); Hopson v. St. Mary's Hosp. , 176 Conn. 485,487, 408 A.2d 260 (1979). The facts alleged in count nine of the plaintiffs' Revised Complaint fail to state a cause of action cognizable under Connecticut law, and must therefore be stricken.
H. Count Eleven — Loss of Parent/Child Consortium
In her eleventh count Daley alleges that she "has been damaged by the loss of mother-child consortium resulting from personal injury suffered by her son," Patrick. For the reasons stated immediately above, this Court will not recognize a parent-child consortium action. Therefore, this count fails to state a claim upon which relief can be granted. Accordingly, the defendants' motion to strike count eleven of the plaintiffs' Revised Complaint is hereby granted.
CONCLUSION
For the reasons set forth above, defendants' motion to strike is granted as to counts five, eight, nine and eleven but is denied as to counts one, two and six.
Michael R. Sheldon Judge