Frederic SARGEANT, Plaintiff,

v.

Thom SERRANI, Defendant.

Civ. No. B–89–593 (TFGD).

United States District Court, D. Connecticut.

Sept. 14, 1994.

Joseph D. Garrison, Robert A. Richardson, New Haven, CT, for plaintiff.

James V. Minor, Richard A. Robinson, Stamford, CT, for defendant.

## RULING ON MOTION
## FOR NEW TRIAL

DALY, District Judge.

Following a three-day trial of this diversity action the jury determined that the defendant Thom Serrani ("Serrani" or "Mayor"), the former Mayor of Stamford, Connecticut, was liable for invading the privacy of the plaintiff Frederic Sargeant ("Sargeant"). The jury awarded Sargeant $20,000 in damages. Serrani now moves for a new trial, asserting that the Court committed error in its evidentiary rulings and jury instructions and arguing that the jury's verdicts were against the weight of the evidence. Mindful of the First Amendment rights asserted by both Sargeant and Serrani, the Court nonetheless remains unpersuaded by the defen-

dant's arguments. Accordingly, and for the reasons stated below, the motion is denied.

## BACKGROUND

The following evidence was introduced at trial. Sargeant became an officer with the Stamford Police in September, 1973, and he advanced to the rank of Lieutenant in November, 1978. While at this position he developed an excellent performance record and experienced no significant health problems.

Sargeant was working the midnight shift on April 11, 1982 when he responded to a radio call reporting a pursuit of several youths, who were fleeing from a smash-and-grab theft of an "Atari" game from a storefront window. The youths led several Stamford officers on a high-speed chase through the city, and Sargeant and another officer attempted to set up a roadblock. As Sargeant exited his patrol car at the roadblock the youths' car drove directly towards him, and he fired his service revolver at the driver before jumping out of the car's way.

Immediately after the incident Sargeant suffered from acute anxiety and depression, related not only to his narrow escape but to the significant possibility that he could have killed a juvenile who was attempting to avoid apprehension for relatively minor offenses. These symptoms increased in severity, and Sargeant received medical treatment. Thereafter Sargeant was placed on sick leave by the Police Department, and he subsequently was diagnosed as suffering Post–Traumatic Stress Disorder—Acute ("PTSD").

During this period the City of Stamford, pursuant to a municipal contract, maintained a sick leave policy which provided an injured officer with indefinite sick leave and which established no deadlines for disability determinations. As a result, an injured officer received full pay and benefits until the officer either returned to work or obtained a disability pension. This policy was very costly to the City and was a frequent source of friction between the City and the police union when the two sides negotiated contracts. Serrani

inherited this issue when he became Mayor of Stamford in 1984, as he oversaw negotiations for contracts with the union.[1] Each successive contract, however, maintained the sick-leave provision. Exhs. 11, 15.

Sargeant sought treatment with Dr. Reid J. Daitzman ("Daitzman"), a clinical psychologist, immediately after going on sick leave, and his treatment continued until January 1983, when Police Chief John T. Considine ("Considine") refused Sargeant permission to resume possession of his police firearm. Both Sargeant and Dr. Daitzman believed that this decision harmed Sargeant's recovery by cutting short his effort to desensitize himself to his traumatic experience. Dr. Daitzman subsequently concluded that Sargeant could never recover from the injury sufficiently to carry a firearm, and as the Police Department required all officers to be able to carry weapons, the psychological injury effectively ended Sargeant's career. Sargeant then applied to the City's Pension Board for a disability pension on August 5, 1983. *See* Exh. 9.

On August 13, 1984, under the pretense of reviewing Sargeant's condition and his intent to resume his duties, the Police Commission summoned Sargeant to one of its regular meetings. After a short period of questioning the Commission recommended to the Chief Considine that Sargeant be terminated effective September 1, 1984, and the Chief followed this recommendation. Sargeant appealed the decision to the State Board of Mediation and Arbitration, which on October 22, 1985 found that the City had acted prematurely in discharging Sargeant without providing him with prior notice that his termination was being considered. Exh. 12. The Board ordered the City to return Sargeant to sick leave status with all contractual benefits. The Board also noted the City's own position that "the doctors are uniform in their opinions that he could not return to work as a police officer," and directed the City to take the necessary steps to recommend to the Pension Board that Sargeant be

---

**1.** As Mayor, Serrani also possessed the authority to examine any data in the possession of any officer, department, or board of the City. Exh. 23; Stamford Charter, § C3–10–9. (References are to full trial exhibits unless otherwise noted.)

given a disability pension. *Id.* Thereafter, despite the efforts of Sargeant and his attorney,[2] the Pension Board did not act on his request for a disability pension until December 14, 1988, when it approved a pension amounting to 25 percent of his salary. Sargeant appealed this decision, and he ultimately was granted a full disability pension at 50 percent of his salary.

Throughout the five and a half year period his application was pending Sargeant remained on sick leave, receiving full salary and benefits. Sargeant's status came under the scrutiny of the Stamford press in late 1987, when the Police Department's sick leave policy again became an issue in negotiations over a new union contract. Several newspaper articles discussing the policy mentioned Sargeant's ongoing sick leave, and noted the nature of his injury and the length of time he had remained at full salary instead of either returning to work or receiving a disability pension. Exhs. 18, 515–517, 519.

Mayor Serrani then joined the fray, not to press the Pension Board for a long-overdue official decision on Sargeant's retirement but to criticize Sargeant in a series of public comments. First, at a press conference on November 24, 1987 the Mayor noted that Sargeant had been fired and reinstated in 1984, and he remarked that Sargeant "should be fired again." [3] Second, on August 1, 1988 the Mayor sent an open letter to the police officers of Stamford concerning the contract negotiations then in progress. In the letter Serrani warned of the abuse of the existing sick leave policy, and he declared that "we should not be paying full salaries to people who are sound in mind and limb." Exh. 17. He also specifically mentioned that Sargeant continued to draw his salary from the City "while living in Vermont," and he disparaged "[p]eople who abuse the system in this manner." Exh. 17.[4]

Attorney Cohen then wrote a newspaper opinion article on January 8, 1989 which did not mention Sargeant by name, but which discussed the problems with the lengthy delays experienced by several disabled police officers who had applied to the Pension Board for disability pensions. Exh. 19.[5] Finally, six days after Cohen's article was pub-

---

2. David M. Cohen ("Cohen"), Sargeant's attorney throughout the proceedings before the Pension Board, wrote numerous letters to both the City and the Board in an attempt to speed the pension process. *See* exhs. 24–25, 28–38, 41–42. The delay was not the result of a dispute concerning Sargeant's disability, as every specialist who examined him, including psychiatrists hired by the City, concluded that as a result of PTSD Sargeant was genuinely and permanently unable to resume police work.

3. The article, entitled "Serrani: Cop on sick leave 5 years should be fired," quoted the Mayor as saying that Sargeant "was fired because he wasn't providing a service to the city of Stamford. That person (Sargeant) should be fired again." Exh. 14. The article went on to quote attorney Cohen, who stated: "Unfortunately, the mayor is misinformed as to the facts in this case." *Id.* Serrani does not contest the accuracy of any quotations attributed to him in this action.

4. The Mayor began the letter by stating that "misunderstandings have developed" concerning negotiations on the pending contract between the police union and the City, and he sought to provide "the correct picture. . . . to set the record straight." Exh. 17. The Mayor then specifically discussed the issue of sick leave with reference to Sargeant:

The City's position on sick leave is to make sure that the policy is never abused. I can't see how any officer could disagree with that. Of course, we should support our officers who are injured in the line of duty. But we should not be paying full salaries to people who are sound in mind and limb. I'm not trying to take anything away from the officers, I'm actually trying to protect you from abuses of the policy and ensure that our full complement of police officers are [sic] doing what they were hired to do. I am sure most of you are aware that there is a Stamford Police Officer, Lt. Sargeant, who is drawing full pay from the City while living in Vermont. People who abuse the system in this manner not only unconscionably deprive us of much needed City funds, but also prohibit upward mobility in the Department by forcing us to hold open an officer's spot that should be available to one of the individuals who gives his or her all to the City every day.

Exh. 17.

5. The article, entitled "Time to Reform Stamford Police Pensions," was published on the op-ed page of the Sunday edition of *The Advocate*, Stamford's daily newspaper. Attorney Cohen described the delays at each step in the application process, and noted specifically that expediting the award of pensions to disabled officers would save the City the added cost of carrying these officers on sick leave. Exh. 19.

lished, and four weeks after Sargeant had been awarded a pension, Serrani was quoted in another article as stating that the Sargeant case "hurts people with legitimate disabilities." Exh. 20.[6] This last comment also occurred after the signing of a new police contract, which contained a timetable requiring regular review of the status of any officer on sick leave, and which therefore removed police officers' sick leave as an issue in public dispute.

Sargeant subsequently filed the instant action, claiming that Serrani's written and spoken comments invaded his privacy. Specifically, Sargeant asserted that Serrani's comments portrayed him in a false light before the public, unreasonably intruded into his seclusion and solitude, and gave unreasonable publicity to his private life. Serrani argued in response that he simply had made responsive, good faith public comments on a matter of legitimate public concern. After a three-day trial the jury found the Mayor liable on Sargeant's false light and unreasonable publicity claims, while finding that Serrani did not invade Sargeant's privacy by unreasonable intrusion. Further, the jury found that Serrani neither had acted within the scope of his official position and in good faith, nor had made statements that only contained information in the public record. The jury initially awarded no damages, however, but stated that "We would like an appropiate [sic] public apology by the Mayor to retired Lt. Sargeant." Jury Interrog. at 2. The Court refused to accept this verdict, and directed the jury to determine an amount of damages upon a finding of liability. The following day the jury repeated its findings as to liability and official immunity and awarded Sargeant $20,000 in damages. The defendant now moves for a new trial.

## DISCUSSION

### I. Standard for a New Trial

■ Rule 59 of the Federal Rules of Civil Procedure provides that a court may order a new trial following a jury verdict "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a)(1). The Court need not view the evidence in favor of the verdicts, but may grant a new trial "even if there is substantial evidence to support the jury's verdict." *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992). While a new trial may be granted if there was substantial error in the admission or exclusion of evidence or if the Court committed error in its jury instructions, *see Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940), the Court may not grant a new trial unless it is convinced that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightening Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir.1988). The burden on the defendant therefore is substantial. *See Strobl v. New York Mercantile Exch.,* 582 F.Supp. 770, 777 (S.D.N.Y.1984).

Alleging that the Court committed substantial error both in the exclusion of evidence and in its jury instructions, and asserting that the jury verdicts were against the weight of the evidence, Serrani argues that the Court should exercise its discretion and order a new trial. The Court reviews these contentions in light of the Supreme Court's directive that, in reviewing a case in which both parties assert rights under the First Amendment, the Court "must make a finding of the whole record so as to assure that the judgment does not constitute a forbidden intrusion on the field of free expression." *New York Times Co. v. Sullivan,* 376 U.S. 254, 285, 84 S.Ct. 710, 728, 11 L.Ed.2d 686 (1964) (quotation omitted).

### II. Exclusion of Evidence

As an initial matter Serrani argues that the Court erred in granting Sargeant's motion in limine concerning evidence of the plaintiff's comments before the Police Commission and the Board of Mediation and Ar-

---

**6.** Serrani stated: "It's outrageous.... It's frustrating for me because we fired the guy, and he was put back in our laps by the system of arbitra- tion.... It hurts people with legitimate disabilities." Exh. 20.

bitration.[7] Specifically, Serrani asserts that he should have been permitted to establish that the Police Commission properly terminated Sargeant on August 13, 1984, and that the Board of Mediation and Arbitration incorrectly reversed this decision. *See* Deft's Mem. at 25–26. Serrani proffered the evidence at trial to establish the truth of his statements to the effect that Sargeant had been reinstated erroneously and should be fired again.

■ Sargeant correctly notes that the City never appealed the decision of the Board of Mediation and Arbitration, and thus it was collaterally estopped from raising the issue in this Court. *See* Pltf's Mem. at 29–30 n. 7 (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1983)). Moreover, the focus of this action was upon Serrani's statements concerning Sargeant, and evidence of Sargeant's termination or the process he received before the Police Commission therefore concerned a collateral issue that would have confused the jury unnecessarily. The proffered evidence thus was properly excluded. *See* Fed. R.Evid. 403; *see also Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81 (2d Cir.1982).

## III. Jury Instructions

The defendant also disputes the substantive content of several of the instructions of law given the jury. As a general matter "[t]he impact of a jury instruction 'is not to be ascertained by merely considering isolated statements but by taking into view all the instructions given and the tendencies of the proof in the case to which they could possibly be applied.'" *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 156–57, 87 S.Ct. 1975, 1992–93, 18 L.Ed.2d 1094 (1966) (plurality opinion) (quoting *Seaboard Air Line R. Co. v. Padgett*, 236 U.S. 668, 672, 35 S.Ct. 481, 482, 59 L.Ed. 777 (1915)). Reviewing the charge as a whole according to this standard,

the Court rejects each of the defendant's contentions.

### A. Expression of Opinion

■ Serrani first argues that the Court improperly refused to charge the jury that any opinions expressed by the defendant must be granted complete protection under the First Amendment. *See* Deft's Mem. at 16; *see also* Deft's Request to Charge at 6 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–08, 41 L.Ed.2d 789 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."); *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 111 n. 4, 113, 119, 448 A.2d 1317 (1982)). Serrani argues that the jury should have been directed to determine if the Mayor's statements were protected as opinions. Deft's Mem. at 16.

■ There is some question whether the opinion-fact distinction so familiar in libel law, *see, e.g., Gertz*, 418 U.S. at 440, 94 S.Ct. at 3051, applies to claims of invasion of privacy under state common law. *See Goodrich*, 188 Conn. at 125–29, 448 A.2d 1317. Even if the distinction is found to be applicable to a state-law claim of invasion of privacy, however, the determination of whether a statement is one of fact or one of opinion is for the Court, not the jury. *See Gertz*, 418 U.S. at 340, 94 S.Ct. at 3007; *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir.1985).

■ The Court found that Serrani's statements purported to declare facts, not opinions, and charged pursuant to this finding. For example, Serrani began his letter to the police officers with the request that "I hope you will ... allow me the opportunity to set the record straight," and he then asserted that Sargeant did not suffer from a legiti-

---

**7.** Serrani proposed to offer such evidence through the following exhibits marked for identification: Exhibit 502 (labor negotiator's file concerning plaintiff's grievance before Board); Exhibit 523 (minutes of Police Commission meeting dated August 13, 1984 concerning plaintiff's dis-

missal); Exhibit 524 (Memorandum dated August 13, 1984 concerning plaintiff's statements to Police Commission); and Exhibit 525 (minutes of Police Commission meeting dated November 28, 1984 denying plaintiff's grievance concerning termination).

mate disability. Exh. 17; *see supra* note 5 and accompanying text. Facts, as distinguished from opinions, are susceptible to proof or disproof of their falsity, *see Buckley v. Littell,* 539 F.2d 882, 894 (2d Cir.), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 786, 50 L.Ed.2d 777 (1977), and Serrani did not challenge Sargeant's position at trial that his disability was genuine. Accordingly, as the Court found the statements in question asserted facts, not opinions, Serrani's request for a jury charge on statements of opinion properly was denied.[8]

### B. Reckless Disregard

Serrani next argues that the Court erred in charging that he could be found liable if he had actual knowledge that his statements were false, or if he acted in reckless disregard as to their falsehood and the false light in which the plaintiff would be placed. *See* Deft's Mem. at 17–18. Serrani argues that this charge on reckless disregard reduced the definition of "malice" to negligence and denied Serrani the right to express comment on public issues. *Id.* (citing *Charles Parker Co. v. Silver City Crystal Co.,* 142 Conn. 605, 615–16, 116 A.2d 440 (1955)).

In *New York Times Co. v. Sullivan* the Supreme Court defined actual malice as knowledge that a defamatory statement is false, or reckless disregard of a statement's truth or falsity. *New York Times,* 376 U.S. at 279, 280, 84 S.Ct. at 725, 726.[9] As it is rare that a speaker will admit to serious doubts as to the truth of a statement, the subjective determination of whether such serious doubts existed may be proved by inference. *Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189, 196 (1st

---

**8.** As a general rule an opinion is privileged as fair comment "only when the facts on which it is based are truly stated or privileged or otherwise known because the facts are of common knowledge or because, though perhaps unknown to a particular recipient of the communication, they are readily accessible." *Goodrich,* 188 Conn. at 122, 448 A.2d 1317 (quotation and emphasis omitted). If the facts that are commented upon are not commonly known, however, then fair comment is no defense. This is so because an opinion must be based upon facts, and if the facts are neither known nor stated, then a defamatory opinion implies that there are undisclosed defamatory facts which justify the opinion. *Id.* The status of such "mixed" opinions has not been clearly articulated, but they generally are privileged "only where made (1) by members of the press or news media; (2) about matters of public interest or concern; and (3) without knowingly or recklessly distorting the facts upon which they are based." *Id.* (footnote omitted) (citing *Gertz,* 418 U.S. at 343, 94 S.Ct. at 3009). Thus even if Serrani's statements were considered "mixed" opinions under this definition they would not be privileged.

**9.** There exists some question whether Sargeant was a "public figure," to whom the stricter "actual malice" standard set forth in *New York Times* applies, rather than a non-public figure, who must prove only that a defendant negligently failed to investigate facts before making a false statement. *See Miles v. Perry,* 11 Conn.App. 584, 589, 529 A.2d 199 (1987). In *Gertz v. Robert Welch Inc.* the Supreme Court defined three categories of public persons. The first category includes persons who have "general fame and notoriety in the community," and are public figures for all purposes. *Gertz,* 418 U.S. at 351–52,

94 S.Ct. at 3012–13. These are individuals who can most easily induce the media to publish their replies to defamatory attacks, and of whom the jury has probably heard prior to the litigation. *Id.* at 352, 94 S.Ct. at 3013. The second category consists of involuntary public figures, those persons who are involved in or directly affected by the actions of public officials. *Id.* at 345, 94 S.Ct. at 3009. Finally, the third category consists of persons who have "voluntarily injected themselves into a public controversy in order to influence the resolution of the issues involved." *Id.* Sargeant arguably was not generally notorious in his community, as he did not have easy access to the media in order to refute Serrani's statements. Further, he did not "voluntarily inject" himself into the debate over sick leave policy, as he had no control over the progress and extent of his disability. Thus Sargeant at best was an "involuntary" public figure, and only Serrani's comments that concerned Sargeant's status on sick leave would be considered under the "actual malice" standard. *See id.* at 345–56, 94 S.Ct. at 3009–15; *see also Time, Inc. v. Firestone,* 424 U.S. 448, 454, 96 S.Ct. 958, 965, 47 L.Ed.2d 154 (1976) (plaintiff not public figure where matter, though highly publicized, was not a "public controversy"); *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 78, 86, 91 S.Ct. 1811, 1837, 1840, 29 L.Ed.2d 296 (1971) (Marshall, J., dissenting) (persons "first brought to public attention by the defamation that is the subject of the lawsuit" remain private); *Holbrook v. Casazza,* 204 Conn. 336, 342, 528 A.2d 774 (1987); *Moriarty v. Lippe,* 162 Conn. 371, 378–79, 294 A.2d 326 (1972); *Miles,* 11 Conn.App. at 589, 529 A.2d 199. Sargeant conceded at trial, however, that he was a public figure, albeit an involuntary one, and thus the Court charged the "actual malice" standard to the jury.

Cir.1982), *aff'd,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). Therefore, a jury may infer actual malice from objective circumstances which can serve to override the speaker's claims of good faith. *Brown v. Petrolite Corp.,* 965 F.2d 38, 47 (5th Cir. 1992). Moreover, while a defendant's mere failure to investigate does not in itself establish reckless disregard, *see Gertz,* 418 U.S. at 343, 94 S.Ct. at 3009; *St. Amant v. Thompson,* 390 U.S. 727, 733, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968), such a finding has been made when a defendant "failed to investigate a story weakened by inherent improbability, internal inconsistency or apparent reliable contrary information." *Zerangue v. TSP Newspapers, Inc.,* 814 F.2d 1066, 1070 (5th Cir.1987); *see also Curtis Publishing Co. v. Butts,* 388 U.S. 130, 156–59, 87 S.Ct. 1975, 1992–94, 18 L.Ed.2d 1094 (1966) (plurality opinion); *Holbrook v. Casazza,* 204 Conn. 336, 528 A.2d 774 (1987); *Jonap v. Silver,* 1 Conn.App. 550, 474 A.2d 800 (1984) (holding reckless disregard shown where defendant published letter attributing certain statements to plaintiff, even though plaintiff voiced objections prior to publication).

■ In defining "reckless disregard," the Court charged the jury that Serrani must in fact have been aware, prior to making his statements, that the statements and the light in which those statements placed the plaintiff probably were false. The jury also was instructed to consider whether Serrani failed to investigate the facts from the records available to him, whether he failed to seek the advice of other knowledgeable persons, or whether he continued making statements after receiving notice of their falsity. The Court further charged the jury that this element had to be proven by clear and convincing evidence. This charge was in accord with prevailing law, as set forth above, and Serrani's argument therefore fails.

**C. Qualified Immunity**

■ Serrani claims the Court incorrectly charged the jury regarding the qualified privilege of a public official to make fair comment on matters of public concern and that the charge was contrary to *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1968). Deft's Mem. at 22. The Court charged the jury that Serrani had to prove three elements to establish this affirmative defense of qualified immunity: (1) that the statements were made when Serrani was upholding a public interest, such as the discharge of a duty required of his position as Mayor; (2) that his statements were made in a proper manner to proper parties only, and that the statements were limited in scope to the public interest he sought to advance; and (3) that he acted in good faith [10] or relied on matters that solely existed in the public record. As this charge correctly stated the law, *see Charles Parker Co.,* 142 Conn. at 615–16, 116 A.2d 440; *Miles,* 11 Conn.App. at 589, 529 A.2d 199 (1987), the defendant's claim is without merit. *See also Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 762–63, 105 S.Ct. 2939, 2947–48, 86 L.Ed.2d 593 (1985); *Lieberman v. Gant,* 474 F.Supp. 848 (D.Conn.1979), *aff'd,* 630 F.2d 60 (2d Cir. 1980); *Holbrook,* 204 Conn. at 344, 528 A.2d 774.

■ Serrani also argues that the Court erred in excluding newspaper articles from its definition of "public record" in its qualified immunity charge. *See* Deft's Mem. at 24.[11] None of the cases cited by Serrani stand for the proposition that a newspaper article constitutes a public record. Rather, the public records exception generally pertains to records that are on file with a public agency, as the public has the right to know the "true contents of th[ose] records." *Cox Broadcasting Corp. v. Cohen,* 420 U.S. 469,

---

**10.** The charge further defined "good faith" as a statement made with an honest belief in its truth and without malice, such as an improper or unjustified motive or a reckless disregard for the statement's falsity, and it referenced an earlier definition of these terms.

**11.** Serrani incorrectly argues that the Court charged the jury that the good faith privilege existed only if he depended solely upon what existed in public records. Deft's Mem. at 24. As the charge directed the jury to consider Serrani's affirmative defense *either* in terms of good faith *or* in terms of reliance upon public records, this argument also is without merit.

495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975). The charge given the jury therefore correctly stated applicable law.

### D. Damages

Serrani also claims Sargeant failed to prove any damages. Deft's Mem. at 19.[12] He first argues that the plaintiff suffered no damage because he received a full salary while on sick leave. Sargeant sought damages not for lost salary, however, but for injuries to his right of privacy. *See Jonap*, 1 Conn.App. at 561, 474 A.2d 800. Recognizing this fact, Serrani also claims that Sargeant could not have sustained any injury as he "was 'libel proof' because of his low reputation among his fellow officers" prior to the Mayor's statements. Deft's Mem. at 19 (emphasis omitted). Serrani ignores the testimony of Lieutenant Francis Cronin, who testified that Sargeant had been held in high esteem prior to his injury, and he further testified that many officers understood Sargeant's predicament in remaining on sick leave while awaiting action on his application for a disability pension. The question of Sargeant's reputation thus was one of fact for the jury to resolve.[13] Accordingly, Serrani's arguments concerning the damages phase of this trial are without merit.

### IV. Weight of the Evidence

Finally, Serrani claims that "the evidence is overwhelming that the Mayor only responded to a storm of press coverage concerning the important public issue of abuse of sick leave, and the Plaintiff was the 'paradigm' of this problem." Deft's Mem. at 20–21. Therefore, Serrani argues, the Court erred in entering judgment against him on Sargeant's claims of invasion of privacy.[14]

Serrani's claim requires a brief review of the evidence. Sargeant offered both testimony and documents upon which a reasonable jury could have found that the Mayor based his statements concerning Sargeant upon newspaper articles he had read in *The Advocate*, despite his belief that *The Advocate* was not a reliable newspaper. Further, Serrani admitted that under Stamford's Charter he possessed the authority as Mayor to examine any data in the possession of any officer, department, or board of the City, and he further admitted that he did not rely on this authority to investigate the true facts concerning Sargeant's sick leave and application for a disability pension. Indeed, the jury could have found that the Mayor relied exclusively for his facts on the articles in *The Advocate*, given Police Chief Considine's testimony that the Mayor never discussed Sargeant's situation with him. Serrani's reliance on newspaper articles for his facts despite his disbelief in the newspaper's credibility, and his failure to investigate the issue despite his authority to do so, support a finding that he

---

12. Serrani makes an additional claim that in rejecting the jury's first verdict, which assessed zero damages and asked Serrani to apologize, the Court "returned the jury to deliberate with the charge that it find 'substantial damages.'" Deft's Mem. at 19. The Court actually instructed the jury that they could find *either* substantial or nominal damages. Indeed, a note sent to the Court by the jury foreperson, and shown to counsel, demonstrated that the jury had understood the Court's instructions on the range of its inquiry. *See* Court's Exh. 7 ("Can you tell us within the law the approximate times that 'substantial awards' are made and the times that 'trifling awards' are made?").

13. Serrani's argument rests on the premise that as Sargeant's reputation stood or fell in its entirety, any injury he received would only have been incremental. This theory of "incremental harm" must be rejected, as the law "proceeds upon the optimistic premise that there is a little bit of good in all of us—or perhaps upon the

pessimistic assumption that no matter how bad someone is, he can always be worse." *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C.Cir.1984) (Scalia, J.), *vacated on other grounds*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Cianci v. New York Times Publishing Co.*, 639 F.2d 54 (2d Cir.1980).

14. As a procedural matter the Court notes that Serrani's argument is best considered as a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). A motion pursuant to Rule 50(b) will be granted only when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992). The Court applies this standard herein.

acted in reckless disregard of the truth of his statements.

Serrani also knew or should have known that his statements were false because of the actions taken by the State Board of Mediation and Arbitration, attorney Cohen, and the City of Stamford. Serrani stated that Sargeant had been fired once and "should be fired again" despite the fact that the Board of Mediation and Arbitration, in a published opinion, reversed the plaintiff's termination and ordered his reinstatement, a decision the City did not appeal. *See* Exh. 12. Following the Mayor's comments attorney Cohen was quoted in two separate newspaper articles to the effect that the Mayor was uninformed about the facts, *see* Exhs. 14, 512. After these articles appeared Serrani drafted and sent his two-page letter to the police officers of Stamford, naming Sargeant as the primary example of the abuse of the sick leave system. *See* Exh. 17. Attorney Cohen then published his commentary on January 8, 1989, generally criticizing the City's delay in processing disability pension applications. *See* Exh. 19. Nonetheless, on January 14, 1989, Serrani again accused Sargeant of exploiting "loopholes" in the system, and stating that Sargeant's actions hurt people with "legitimate disabilities." Exh. 12. Serrani made these statements despite the fact that the City itself consistently took the position, based on the opinion of all of the medical experts, that Sargeant suffered from a legitimate disability.

Under these circumstances, where all of the reliable information contradicted his statements, the jury reasonably could have found, by clear and convincing evidence, that Serrani spoke and wrote with the awareness that his statements were false or that he did so with reckless disregard of their truth. The evidence thus supports the jury's finding of liability on Sargeant's claim of invasion of privacy by false light. *See Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *Goodrich,* 188 Conn. at 126–28, 448 A.2d 1317.

Serrani also argues that the evidence was insufficient to support the jury's verdict on Sargeant's claim of invasion of privacy by unreasonable publication. *See* Deft's Mem. at 20. The jury was charged that to prove this claim, Sargeant had to establish three elements: (1) Serrani made public statements or made statements he knew would be made public; (2) Serrani's statements dealt with facts that were not of "legitimate concern" to the public; and (3) Serrani's statements would be considered highly offensive by a reasonable person in Sargeant's position.[15] In giving an affirmative answer on this Count, the jury concluded that Serrani's public statements would be considered highly offensive by a reasonable person. Serrani argues, however, that the evidence introduced at trial demonstrated that his statements were of legitimate public concern. *See id.* at 20–21.

The Court directed the jury, when addressing the question of whether Serrani's comments touched matters of legitimate public concern, to consider the social value of the facts contained in his statements, the degree to which a reasonable person considers those facts private, and the degree to which Sargeant voluntarily revealed those facts publicly himself or sought to keep them private. *See Goodrich,* 188 Conn. at 130–32, 448 A.2d 1317. A reasonable person would consider Sargeant's medical diagnosis to be a private fact, and Sargeant did not voluntarily reveal this fact but actively sought to keep it private. *See, e.g.,* Exh. 37 (letter from Cohen to Police Department) ("We wish to notify you of a continuing objection on behalf of Lt. Sargeant to any disclosure of his personnel or medical files ... because such a disclosure would constitute an invasion of Lt. Sargeant's personal privacy."). Further, while the issue of sick leave was a matter of some social value, the jury reasonably could find that the nature of Sargeant's disability was not, particularly as Serrani publicized false facts concerning Sargeant's condition. *Cf. Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 489–90, 95 S.Ct. 1029, 1043–44, 43 L.Ed.2d 328 (1975). Finally, the last of Serrani's

---

**15.** Serrani also takes issue generally with the Court's charge on invasion of privacy by unreasonable publication. *See* Deft's Mem. at 21–22.

As the charge followed the standard set forth by the Connecticut Supreme Court in *Goodrich,* this argument is meritless.

comments occurred after the City and the police officers' union had agreed on a contract that corrected some of the perceived problems with the sick leave policy, and therefore this comment had no relevance to any ongoing public debate. *See supra* note 8 and accompanying text. As the jury thus reasonably could conclude that Serrani's comments concerning Sargeant did not address a matter of legitimate public concern, the Court is convinced that the jury did not reach a "seriously erroneous result" as to this claim. *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). Accordingly, the weight of the evidence supports the jury's finding of liability on Sargeant's claims of invasion of privacy by false light and by unreasonable publicity.[16]

## CONCLUSION

For the reasons stated above, the defendant's motion for a new trial is hereby DENIED.

SO ORDERED.

---

**16.** The Court has reviewed the other arguments advanced by Serrani and concluded that they are without merit.