[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Gordon Mello, filed an eight-count complaint against the defendant, Connecticut Republican State Central Committee a/k/a Connecticut Republicans, alleging defamation for statements contained in a series of campaign circulars, which were mailed to Town of Somers residents during a special election campaign for the First Selectman of Somers. Mello further alleges that the Connecticut Republicans' actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The Connecticut Republicans deny the claims made by Mello, asserting that the statements in the campaign circulars were true, and therefore, not defamatory. The Connecticut Republicans also claim that the statements were not made with the knowledge that they were false or with reckless disregard of whether they were false or not.
This case was tried to the Superior Court in Tolland, June 27-28, 2001, with post trial briefs due by July 30, 2001. The parties were represented throughout the proceedings by counsel. At the trial Mello called as witnesses George Gallo, the executive director of the Connecticut Republicans, and Steven Bafundo, a certified public accountant and treasurer for the Connecticut Republicans. The plaintiff, Gordon Mello, also testified. The defendant, the Connecticut Republicans, called as witnesses, Nicole Griffin, political director of the Connecticut Republicans, and Alfred Brouillet, chairman of the Republican Town Committee for Somers from 1995-2000.
 Facts
The following findings are based on a review of the exhibits, the testimony of the witnesses, and the stipulated facts submitted by the CT Page 15276 parties. In May 1997, two years after Mello was appointed to the Somers Ethics Commission, the other members of the Ethics Commission composed and submitted a letter to the Somers Board of Selectmen requesting the board to remove Mello from the Ethics Commission. From August 1996 to October 1997, the Hartford Courant and Journal Inquirer published articles regarding Mello and his disputes with other members of the Ethics Commission. Mello resigned from the Ethics Commission in August 1997, and announced his candidacy for First Selectman of Somers. Mello was defeated in the election for First Selectman in 1997, but received enough votes to serve as a member of the Somers Board of Selectmen. Mello was also a candidate for First Selectman of Somers in 1999. The election resulted in a recount and Mello challenged the recount votes in court. The court ordered a special election be conducted on January 4, 2000. Mello won the special election.
The Somers Republican Town Committee published a series of campaign circulars and mailed them to voters in the Somers. The campaign circulars were mailed during a two week period beginning on December 16, 1999 and ending on December 27, 1999. Each voter received all of the circulars in the series. The first campaign circular contained a verbatim copy of the ethics commission letter and comments regarding Mello.
Prior to the special election of January 4, 2000, the Somers Republican Town Committee requested assistance from the Connecticut Republicans for the campaign. Brouillet submitted a summary of the campaign plan and two drafts of the first campaign circular in the series to the Connecticut Republicans. After reviewing the campaign plan and the drafts of the campaign circular, the Connecticut Republicans did in fact pay for the cost of printing and mailing the campaign circulars in the approximate amount of $3000.
On December 30, 1999, Mello served a written demand on the Connecticut Republicans that a retraction of the statements referenced in the December 20, 1999 complaint by Mello be issued and delivered in the same manner as the original statements so as to be received on or before January 4, 2000. The demand for retraction contained the following language "To be effective the retraction must be delivered on or before January 4, 2000." George Gallo gave credible testimony that there was not enough time for the Connecticut Republicans to print and mail a retraction to the voters in Somers on or before January 4, 2000.
Mello seeks punitive damages and attorney's fees from the Connecticut Republicans, and a restraining order preventing the Connecticut Republicans from repeating the same allegations in the future.
 Defamation
CT Page 15277
"Under Connecticut law, a defamation is defined as a false and malicious publication of a person, which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him. . . . In order to sustain a cause of action for defamation, the plaintiff must show that the defendant made an unprivileged publication of a false and defamatory statement." (Citations omitted; internal quotation marks omitted.) Zupnick v. The Associated Press,Inc., 31 F. Sup.2d 70, 72 (D.Conn. 1998).
The parties have stipulated that Mello is a public figure for purposes of Connecticut's defamation laws, and that the statements published by the Connecticut Republicans in the campaign circulars were part of and in the context of a political campaign. "[A] public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767,775, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). See also Garrison v. Stateof Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("[A] public official might be allowed the civil remedy only if he establishes that the utterance was false. . . ."). In addition to having to show that the Connecticut Republicans published a false and defamatory statement, Mello has the additional burden of proving by clear and convincing evidence that the Connecticut Republicans published the alleged defamatory statements with actual malice. See Woodcock v. JournalPublishing Co., 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied,513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995).
Mello claims that the campaign circulars as described in the various exhibits attached to his complaint are defamatory. Among his claims is the statement: "Ethics Commission Declares Mello Unfit for Office." This particular statement appeared on the outside of each circular in the series. The first circular contained a verbatim copy of the ethics commission letter requesting Mello's removal from the Ethics Commission by the Board of Selectmen. Mello claims that this statement is not true, because it leads the recipient to believe that the Ethics Commission declared Mello unfit for the office of First Selectman. Mello further claims that the Ethics Commission never declared him unfit for any office. The Connecticut Republicans claim that statement is true based on the letter contained in the circular.
Among Mello's other claims were the following statements: "Gordon Mello was appointed to the Ethics Commission in 1995. As a new member he was party to a series of frivolous lawsuits and disruptive behavior against the commission members and town officials"; "His actions ground the commission to a halt"; and "Forced from the Ethics Commission, he resigned the Republican Party, seeking alignment with those more like CT Page 15278 himself" Mello is particularly concerned with the term "frivolous lawsuits" in the first statement and "forced from the Ethics Commission" in the third statement. Mello contends that he was never a party to frivolous lawsuits, his actions did not ground the commission to halt, and he voluntarily resigned from the Ethics Commission. Mello argues that the statements are libel per se and do not require innuendo to make them defamatory. Mello further argues that the statements were not privileged and were made with actual malice.
The Connecticut Republicans argue that the statements were true, or substantially true, and that they were not made with malice. The Connecticut Republicans also assert that Mello's demand for retraction did not afford a realistic amount of time to investigate and issue a retraction, if an investigation revealed that it was warranted. The Connecticut Republicans contend that Mello failed to provide any evidence of damages.
A. Whether Mello Proved that the Connecticut Republicans Made False orDefamatory Statements
"In order to prevail on [a claim of libel], the plaintiff must prove that a false and defamatory statement was made; that there was an unprivileged communication to a third party; and that there was fault on the part of the publisher of the statement. Miles v. Perry,11 Conn. App. 584 (1987)." Martin v. Griffin, Superior Court, judicial district of Hartford, Docket No. 586133 (June 13, 2000, Lavine, J.).
Mello fails to establish that the statements, which were the basis of his complaint, were false. The court finds that the statements were opinions regarding the events that unfolded between Mello and the Ethics Commission. No evidence was presented to establish that any of the recipients of the circular believed the opinions expressed in the circular, nor does it establish that the opinions were statements of fact. The evidence shows that the opinions in the campaign circular were based in part on an actual letter sent to the Board of Selectmen by the Ethics Commission in May 1997. The evidence also shows that the disputes between Mello and his fellow ethics commissioners were reported in numerous news articles that were stipulated by the parties to be full exhibits. Therefore, the campaign circulars were presenting information and opinions on an issue that was already public information. Regardless of the validity of the opinions, they are based on actual events and any false implication that may result from those opinions is not actionable as defamation. "Even though a false implication may be drawn by the public, there is no redress for its servant. Where public officers and public affairs are concerned, there can be no libel by innuendo." Martinv. Griffin, supra, Superior Court, Docket No. 586133. CT Page 15279
"The defendants have no obligation to place the plaintiff in the most favorable light." Martin v. Griffin, supra, Superior Court, Docket No. 586133. "The principal activity of a candidate in our political system, his `office', so to speak, consists in putting before the voters every conceivable aspect of his public and private life that he thinks may lead the electorate to gain a good impression of him. . . . [T]he candidate who vaunts his spotless record and sterling integrity cannot convincingly cry `Foul!' when an opponent or an industrious reporter attempts to demonstrate the contrary." Id.
Mello presented his credentials to the residents of Somers by sending out his own flyers, and he included his position on the Ethics Commission. The problems Mello experienced as an ethics commissioner, as reported in the campaign literature, are a legitimate expression of free speech in the context of a political campaign. The evidence shows that the Somers Republican Town Committee believed the information regarding Mello's difficulties with the Ethics Commission were relevant because it showed voters how Mello behaved when serving on a town board or commission.
The campaign circulars expressed opinions for the purpose of informing voters during an election campaign. At most, the evidence shows that the campaign circulars exaggerated the problems that Mello had with the Ethics Commission. Mello failed to demonstrate that those opinions were based on facts that were false.
B. Qualified Privilege in Political Campaigns
"Any political campaign is a process of debate and appeal publicly conducted in a way to bring knowledge to the voters to assist them in making a choice on election day. It is a time-honored American institution indispensable to our way of life. Courts must be careful not to permit the law of libel and slander to encroach unwarrantably upon the field of public debate." Charles Parker Co. v. Silver City Crystal Co.,142 Conn. 605, 614-15, 116 A.2d 440 (1955). "The privilege of fair comment is a common law qualified privilege arising out of an occasion to express an opinion or otherwise comment on matters of public interest."Miles v. Perry, 11 Conn. App. 584, 595, 529 A.2d 199 (1987). "Whether the occassion is a one of privilege is a question of law . . ." CharlesParker Co. v. Silver City Crystal Co., supra, 142 Conn. 615.
"Speechmaking and the broadcasting of speeches in an election campaign are, on general principles, occasions of qualified privilege." CharlesParker Co. v. Silver City Crystal Co., supra, 142 Conn. 615. "[P]rivilege extends to misstatements of fact if made in good faith, without malice CT Page 15280 and under the honest belief that they are true. . . . The facts stated, however, must bear a reasonable and proper relation to the issue under discussion. If an individual is involved, they must concern his official conduct or fitness for office. . . . It is often impossible to differentiate between what is comment and what is a statement of fact." (Citations omitted.) Id., 616.
The campaign circulars contained information regarding Mello's official conduct as a member of the Ethics Commission. Accordingly, the Connecticut Republicans had a qualified privilege during the special election to publish the campaign circulars regarding Mello's public activities and any other information that was reasonably related to his ability to serve as First Selectman of the town of Somers. The privilege, however, could be lost upon a showing that the Connecticut Republicans abused the privilege by publishing defamatory or false statements with actual malice.
C. Whether Mello Proved that the Connecticut Republicans Published theStatements in the Campaign Circulars with Actual Malice
Even if Mello had established that the Connecticut Republicans published false and defamatory statements, Mello could not recover damages for defamation without a showing that the Connecticut Republicans acted with malice. "The First Amendment requires that we protect some falsehood in order to protect speech that matters." Izzo v. Deafenbaugh, Superior Court, judicial district of New Haven, Docket No. 392311 (September 23, 1998, Blue, J.) (22 Conn. L. Rptr. 650). "The constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v.Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). "Further, those who are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with such actual malice." (Internal quotation marks omitted.) Holbrook v.Cassazza, 204 Conn. 336, 342, 528 A.2d 774 (1987), cert. denied,484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 651 (1988).
"Where an article is published and circulated among voters for the sole purpose of giving what the defendant believes to be truthful information concerning a candidate for public office and for the purpose of enabling such voters to cast their ballot more intelligently, and the whole thing is done in good faith and without malice, the article is privileged, although the principal matters in the contained in the article may be CT Page 15281 untrue in fact and derogatory to the character of the plaintiff; and in such case the burden is on the plaintiff to show actual malice in the publication of the article." (Internal quotation marks omitted.) New YorkTimes Co. v. Sullivan, supra, 376 U.S. 280-81, quoting Coleman v.MacLennan, 78 Kan. 711, 98 P. 281 (1908). "The United States Supreme Court has indicated that, at a minimum, actual malice requires that there be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." (Internal quotation marks omitted.) Woodcock v. Journal Publishing Co., supra, 230 Conn. 537.
The court finds the testimony of the witnesses for the Connecticut Republicans credible. The testimony of these witnesses shows that the Connecticut Republicans believed Brouillet and had no reason to doubt him. Brouillet showed the Connecticut Republicans drafts of the first circular. The first circular contained the ethics commission letter upon which it was based, and Brouillet described his other sources of information. The Connecticut Republicans asked questions of Brouillet and verified that the ethics commission letter was an exact reproduction of the letter sent to the board.
The Connecticut Republicans were justified in relying on Brouillet for verification of the statements contained in the circulars. Mello did not produce any credible evidence showing that there was a reason to doubt Brouillet's veracity or that he had a poor reputation in the community. See Moriarity v. Lippe, 162 Conn. 371, 381, 294 A.2d 326 (1972) ("consideration of the reputation of the informant likewise fails to establish that [the defendant] had obvious reasons to doubt her veracity or the accuracy of the letter.")
Mello asserts that verification of the statements by the Connecticut Republicans was insufficient, because reliance on Brouillet, the original source of the statements, did not establish that they were true. Mello contends that the Connecticut Republicans could have verified the information in the campaign circulars through a source other than Brouillet, such as an unbiased third party. The court finds, however, that even though the Connecticut Republicans did not investigate other sources to verify the truth of the statements, this does not establish malice. "It is well established . . . that the failure to investigate will not alone support a finding of actual malice. . . . Such a failure attests rather to want of care or to thoughtlessness than to bad motives or dishonesty." (Citations omitted; internal quotation marks omitted.)Izzo v. Deafenbaugh, supra, 22 Conn. L. Rptr. 651. "A showing of negligence in a First Amendment case falls far short of establishing malice." Id. "Rather, the publisher must act with a high degree of awareness of . . . probable falsity." (Internal quotation marks omitted.) CT Page 15282Gertz v. Robert Welch, Inc., 418 U.S. 323, 332, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974). The statements were substantiated by the verbatim copy of the letter and Brouillet's description of his sources of information. As stated previously, the Connecticut Republicans found Brouillet to be a credible source and Mello failed to prove to the court that there was a reason to doubt Brouillet's veracity.
Mello also contends that the Connecticut Republicans failure to retract the statement was indicative of malice. The court disagrees. The evidence shows that the demand for retraction was received at the office of the Connecticut Republicans on December 30, 1999. The demand stated that to be effective the retraction must be delivered on or before January 4, 2000. The court finds that it would have been unrealistic for the Connecticut Republicans to determine that the statements were false, print circulars and have them delivered to the recipients of the original circulars on or before January 4, 2000. Accordingly, the fact that the Connecticut Republicans never issued a retraction is not sufficient evidence to prove malice.
Mello failed to provide evidence that the Connecticut Republicans published the statements with knowledge that they were false or with reckless disregard of whether they were false of not. The court finds that Brouillet was a credible source for verification of the information in the campaign circulars and the Connecticut Republicans were justified in relying upon him. The court further finds that the fact that the Connecticut Republicans did not print a retraction does not show that they acted with malice. Mello failed to sustain his burden to prove by clear and convincing evidence that the Connecticut Republicans acted with actual malice.
 The Importance of Open and Robust Debate
"[T]he reckless disregard standard may permit recovery in fewer situations than would a rule that publishers must satisfy the standard of the reasonable man or the prudent publisher. But New York Times and succeeding cases have emphasized that the stake of people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment Policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones. We adhere to this view and to the line which our cases have drawn between false communications which are protected and those which are not." Martin v.CT Page 15283Griffin, supra, Superior Court, Docket No. 586133, quoting St. Amant v.Thompson, 390 U.S. 727, 731-32, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).
"It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of [candidates] whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great." (Brackets in original; internal quotation marks omitted.) Strada v.Connecticut Newpapers, Inc., 193 Conn. 313, 326, 477 A.2d 1005 (1984); See also New York Times Co. v. Sullivan, supra, 376 U.S. 281.
The First Amendment right of freedom of speech protects the ability of the public to openly discuss the qualities and characteristics of political candidates during political campaigns. Campaigns provide voters with information that is necessary to make an informed decision about those individuals seeking public office. In this particular case, the information that was distributed in the campaign circulars concerned Mello's ability to work with other members of the town government. "Debate on public issues should be uninhibited, robust, and wide-open, and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Id., 270. The campaign circulars, however harsh or malicious Mello believed them to be, were made in the course of a political campaign and expressed opinions regarding Mello's suitability for office.
 Conclusion
"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard . . . was fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people. . . . The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of our republic, is a fundamental principle of our constitutional system." (Citations omitted; internal quotation marks omitted.) New York TimesCo. v. Sullivan, supra, 376 U.S. 270.
Mello is a public figure, and therefore, he is required to proved that the alleged defamatory statements were false and published with actual malice. Mello failed to provide sufficient evidence demonstrating that the statements in the campaign circulars were false. Furthermore, even if CT Page 15284 those opinions could be viewed as false statements of fact, Mello did not establish by clear and convincing evidence that the opinions were published with the knowledge that they were false or with reckless disregard of whether they were false or not. Because Mello did not satisfy his burden of proving that the statements in the campaign circulars were false or made with actual malice, Mello also failed to prove that the Connecticut Republicans violated CUTPA.
Accordingly, judgment may enter for the defendant.
Graziani, J.